THE STATE OF IOWA, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant; and F. T. CAMPBELL *et al.*, Railroad Commissioners, Appellees, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellants.

1. **Railroad Commissioners:** POWERS: COMPLAINT: SUFFICIENCY: RECORD. While the right of action of the railroad commissioners in respect to matters within their jurisdiction is not limited to cases wherein a complaint is filed by a party injured, it is necessary that the record of the board show the facts constituting the grounds of the complaint in any case, whether the action of the board is based wholly upon a complaint filed, or partly upon such complaint and partly upon facts within the knowledge of the board, or upon facts within the knowledge of the board alone, to the end that the defendant may be informed of the facts constituting the ground of complaint against it.

2. ———: ORDERS: ENFORCEMENT BY ACTION: JURISDICTION. An order of the railroad commissioners can not be enforced by action in the district court upon grounds other than those presented in the record of said commissioners as the basis of such order.

3. ———: ———: REASONABLENESS. A complaint alleging that the
complainants are an organization, having "in view, as one of its
objects, the shipment of produce and coal over the defendant's line
of road," and that they have applied to the defendant for room upon
its side tracks, "for the erection of a coal shed for the use and benefit"
of said organization, "when shipping coal over the defendant's line of
railroad," and that they have been denied the same, *held*, not to
justify an order by the railway commissioners that said application be
granted, it not being shown that any discrimination had been prac-
ticed by the defendant, nor that it had any land to grant to any one.

*Appeals from O'Brien District Court.*—HON. FRANK R.
GAYNOR, Judge.

TUESDAY, OCTOBER 25, 1892.

ACTIONS in equity to enforce orders of the railroad
commissioners requiring the defendant to set apart
grounds on its side tracks at Hartley, Iowa, for the use
of the Sunny Hill Alliance, No. 1506, for the erection
of a coal shed. Motions to make more specific, and to
strike out parts of the petition, were overruled. The
defendant excepted. Demurrers to the petition were
also overruled. The defendant excepted and standing
on its motions and demurrers, appeals.—*Reversed.*

*John W. Carey* and *Geo. E. Clarke*, for appellant.

*John Y. Stone*, Attorney General, *J. B. Dunn* and
*T. C. Dawson*, for appellees.

KINNE, J.—These two cases involve substantially
the same questions, and are triable upon the same com-
plaint. They were commenced separately, presumably
in order to raise the question as to which was the pro-
per party plaintiff, the commissioners or the state of
Iowa. That question was not argued by counsel, and
hence is not now considered. But see *Smith v. Chicago,
Milwaukee & St. Paul R'y Co., ante*, page 202.

The first petition filed was entitled in the name of
the railroad commissioners against the defendant, and

contained the following allegations, in substance: That the plaintiffs were the duly elected, qualified, and acting members of the board of railroad commissioners of the state of Iowa; that the defendant, at the time therein mentioned, was a corporation for pecuniary profit, and a common carrier operating a line of railway through O'Brien county, Iowa; that the town of Hartley is in said county, and is a station on the defendant's line of road, equipped with a depot, depot grounds, and side tracks belonging to the defendant; that there is no other line of railroad through or near said town; that the Sunny Hill Alliance, No. 1506, is an organization of individuals composed of farmers; that it is located in said county, and has "in view, as one of its objects, the shipment of produce and coal over the defendant's line of road;" that on August 1, 1890, the members of said alliance made application to the proper officers of the defendants company for "room upon its side tracks in said town of Hartley for the erection of a coal shed for the use and benefit of said alliance, when shipping coal over the defendant's line of railroad to said town," and that they were denied the same. August 22, 1890, the members of said alliance made complaint, to the railroad commissioners of Iowa, of the action of the defendant, as follows:

"*To the Honorable Railroad Commissioners:*

"DEAR SIRS:—We, the members of the Sunny Hill Alliance, No. 1506, desire room for a coal house site in Hartley, O'Brien county, Iowa, but the company says there is no need for any more coal houses. Now, what we wish to know is this: Have you any authority in the matter? If you have, we appeal to you for aid, and to see that the site is secured at once. If not, we expect nothing from the railroad company. We think the company is influenced by the merchants

of Hartley, as they are terribly down on the farmer's alliance.

"[Signed]          O. L. MORGAN, Sec'y,
"Trinnello, Clay County, Iowa."

A true copy of said complaint was duly served upon the defendant August 26, 1890: That the defendant refused to grant the application, on the ground that no necessity existed therefor, and that it had no space which could be devoted to said purpose. That afterwards, on due notice, a hearing was had before said commissioners, and they ordered that the application be granted within ten days from October 3, 1890. A copy of the proceedings and order was duly served upon the defendant. That the defendant refused to comply with said order. An injunction was prayed to restrain the defendant from continuing to violate said order.

To this petition the defendant demurred. *First.* For want of jurisdiction in the commissioners over the subject-matter. *Second.* Because the facts did not entitle plaintiffs to the relief demanded. The demurrer was sustained, and on February 18, 1891, the plaintiffs filed an amended and substituted petition in which the following allegations were made, in addition to those in the original petition, viz.:

"Paragraph 4. That the Sunny Hill Alliance, No. 1506, is an association of farmers, residents of the said county of O'Brien, organized *and doing business*, of which O. L. Morgan was at the times hereinafter mentioned, the secretary and acting agent. *That said Sunny Hill Alliance, No. 1506, is, and was at the times aforesaid, a dealer in coal, doing business at said town of Hartley, and, as such dealer in coal, shipped, or was entitled and wished to ship, coal over defendant's said line of road, and used, or was entitled and wished to use, the defendant's said station at Hartley for such business; that the said defendant, at its said station of Hartley,*

*owns and did own, at all the times herein mentioned, a large amount of land adjacent to its track, which is and was used as depot grounds for the loading and unloading of freight and the transaction of other business connected with the operation of said station; that in the transaction of the business of shipping and dealing in coal at the said station of Hartley, and at similar stations, the permission of and right to use a coal shed adjacent to defendant's tracks is a convenient and necessary adjunct to the economical and profitable conduct of said business of shipping and dealing in coal.*

"Paragraph 5. That, at the defendant's said station of Hartley, the said defendant is, and has been at all times mentioned herein, in the habit of permitting coal dealers to use and operate coal sheds adjacent to its tracks, and in particular has permitted and does now permit three coal dealers to use and operate coal sheds adjacent and contiguous to its side track at said station of Hartley, and has leased and granted to said three coal dealers the ground on which to build and operate their coal sheds for the convenient transaction of their business of dealers in coal.

"Paragraph 6. That the said Sunny Hill Alliance, No. 1056, *a dealer in coal as aforesaid, and wishing to engage in the business of largely shipping and receiving coal over the defendant's said line of road, and at and through the said station of Hartley,* did, on or about the first day of August, 1890, through its secretary, authorized agents, and members, make to the defendant company an application to be permitted to erect, use and operate a coal shed adjacent to its side tracks at Hartley, *on substantially the same terms as the defendant had granted and was granting similar rights and privileges to the other dealers in coal at Hartley as aforesaid,* and said alliance did at that time make application for room for the erection of a coal shed for use in shipping and dealing in coal, and

for a lease of a portion of the company's ground *on substantially the same terms as granted to the other coal dealers;* that the said right, privilege, the room and lease, as aforesaid, were by the defendant denied, and refused to said alliance.

"Paragraph 7. *That the said right and privilege to so use and operate a coal shed on the defendant's ground at Hartley, and the leasing thereof as aforesaid, so granted to the other coal dealers at that station, and so denied to said alliance, is necessary to the successful conduct of the business of dealing in coal; that with such right the unloading of coal is very convenient and economical, and without such right difficult and more expensive; that the dealers possessing such privileges and coal sheds can unload their coal directly from the railroad cars, and store the same until delivered, and that those not possessing such privileges and coal sheds must unload the coal into wagons, haul it away from the track and defendant's ground and unload it for storage,—a tedious and expensive operation; that in various other ways the dealers possessing sheds adjacent to defendant's track, and on its ground can therefore conduct their business more economically and conveniently than those not possessing them; that the permission to erect, occupy and use coal sheds and the leases of the grounds for such purposes, granted by defendant to the said three other dealers, and the refusal to give the same or substantially the same rights and conveniences to the said alliance, operates as a discrimination in favor of said dealers and against the said alliance, and is unjust, unreasonable and in violation of the defendant's duties and obligations as a common carrier.*"

A copy of the record was also set out, and the prayer also asked that a decree be entered declaring the order just and reasonable. To this petition the defendant filed a motion to strike from the petition all that part thereof which appears above in italics, on the ground that it was immaterial, irrelevant and incompetent,

for the following reasons: "*First.* The law under which plaintiffs acted required them to make the record upon which said order should be enforced by the court, and to find the facts in support of the order so made by them, and the said words are a substantial allegation not contained in the record sued on, and not embraced in the finding made by the board of railroad commissioners. *Second.* It is not competent for the plaintiffs to bolster up the order made by the board of railroad commissioners by facts or allegations outside of the record made by the board of railroad commissioners, upon which the order in the premises is based. *Third.* This court has no jurisdiction to consider facts in behalf of plaintiffs outside of the record, in determining whether or not the order upon which suit is brought is a just and proper order, and whether it will, by a decree entered in the cause, enforce the same. *Fourth.* The same constitutes an attempt on the part of plaintiffs to present a different cause before this court on the question of the enforcement of the order made by the board of railroad commissioners, than the cause as it was stated before the said board of railroad commissioners at the time of the making of the order sought to be enforced in this action. And as to the allegations relating to the ownership by defendant of a large amount of land adjacent to its side track, etc., it is further moved to strike it out, because the record sued on found that there were only two small tracts along said side track that were unoccupied by buildings." Said motion also asked that the petition be made more specific in stating whether the application was verbal or written, and, if in writing, to annex the same or set out a copy thereof. Afterwards, the defendant demurred to the petition, on the ground that it did not state facts entitling the plaintiffs to the relief demanded.

The parties thereafter entered into the following

stipulation: "It is hereby stipulated and agreed, by and between the parties hereto, that the defendant may file its motion to the above entitled cause to strike portions of plaintiff's petition, etc. and also its demurrer, and the filing of said demurrer shall not be taken or deemed to waive the questions raised by said motion, nor shall the said demurrer be taken or held to waive argument, submission or decision upon this motion; and the said action and demurrer are hereby set down for hearing by agreement before the HON. F. R. GAYNOR, judge of said court, at Le Mars, Plymouth county, Iowa, on the tenth day of April, A. D. 1891; and it is hereby stipulated and agreed that said motion and demurrer shall be argued and submitted before the said judge at said time and place by the parties hereto, in vacation, and decision thereon made, entered, and rendered by said judge in vacation as of this term." On May 27, 1891, the court overruled both motion and demurrer; and the defendant elected to stand thereon, and appealed. The original petition in the case of the state of Iowa against the defendant was filed on the same day as the amended and substituted petition in the other case, and contained the same allegations. The same motion and demurrer were filed thereto, the same agreement entered into regarding them, and the subsequent proceedings were the same as in the case first stated, except that the defendant also demurred because another action was pending between the same parties for the same cause, giving its number and title, and because the statute under which this action was brought was repealed by chapter 28 of Acts of the Twenty-second General Assembly.

I. The first question presented is, whether the filing of a complaint by the party aggrieved is neces-

1. RAILROAD commissioners: powers: complaint: sufficiency: record.

sary to the authority of the railway commissioners to take action in any case, or may they, in the absence of such com-

plaint, enter upon an investigation of a subject-matter, as to which power to act has been conferred upon them by the legislature.

By section 3, chapter 77 of Acts of the Seventeenth General Assembly (McClain's Code, section 2033), it is provided: "Said commissioners shall have the general supervision of all railroads in the state operated by steam, and shall inquire into any neglect or violation of the laws of this state by any railroad corporation doing business therein, or by the officers, agents, or employees thereof, and shall also, from time to time, carefully examine and inspect the condition of each railroad in the state, and of its equipment, and the manner of its conduct and management, with reference to the public safety and convenience. * * * Whenever, in the judgment of the railroad commissioners, it shall appear that any railroad corporation fails, in any respect or particular, to comply with the terms of its charter, or the laws of the state, or whenever, in their judgment, * * * any change in its rates of fare for transporting freight or passengers, or any change in the mode of operating its road and conducting its business, is reasonable and expedient, in order to promote the security, convenience and accommodation of the public, they shall inform such railroad corporation," etc. Section 13, chapter 28 of Acts of the Twenty-second General Assembly (McClain's Code, section 2061), provides: "Any person, firm, corporation, or association, or any mercantile, agricultural, or manufacturing society, or any body politic or municipal organization, complaining of anything done or omitted to be done, by any common carrier subject to the provisions of this act, in contravention to the provisions thereof, may apply to said commissioners by petition, which shall briefly state the facts; whereupon a statement of the complaint thus made, with the damages, if any are alleged, shall be forwarded by the said commissioners to such common

carrier," etc., "and said commissioners, whenever they may have sufficient reason to believe that any common carrier is violating any of the provisions of this act, shall at once institute an inquiry in the same manner and to the same effect as though complaint had been made."

From a reading of these sections, it seems to us very clear that they provide that a matter within the jurisdiction of the board may be inquired into on the petition of the party aggrieved, or the commissioners may act in a proper case on their own motion, and in the absence of any complaint at all, formal or otherwise. The statute confers upon the commissioners power to act in certain cases. The exercise of the power thus conferred may be invoked by an injured party, or the board may themselves proceed to act if cognizant of the fact that a common carrier, subject to its control, has done, or failed to do, anything which would be the proper subject of complaint, within the powers conferred upon such board. And we have no doubt, if a complaint is insufficient on its face, that the board, before proceeding in the matter, might require the complainant to perfect the same, or might amend the same, if cognizant of the necessary facts which would present a proper case, and then serve "a statement of the complaint thus made," including such amendment, on the defendant. So that it seems to us, in every case, whether the action of the board is based wholly on a complaint filed, or partly upon it and partly upon other facts within its knowledge, or wholly upon the facts within the knowledge of the board, the record of the board should show the facts constituting the complaint. Then when the defendant receives the statement of the same, it will know precisely what it is asked to do, or to refrain from doing, and the facts constituting the ground of the complaint against it.

II. It is urged that the case in the district court

must be heard upon the record as made before the commissioners; that is, that matters existing outside of the record as made before the commissioners cannot be pleaded in the district court for the purpose of showing that the complaint made before the board was in fact well grounded. The statute provides that "a statement of the complaint thus made" before the commissioners shall be served upon the defendant, who is required to satisfy the complaint or to answer the same in writing within a reasonable time, to be fixed by the commissioners. Section 13, chapter 28, of Acts of the Twenty-second General Assembly. From further provisions in the same statute it is clear that the purpose of this requirement is to enable the defendant to rectify the wrong, if one has been done, without further trouble or litigation; to inform it of the wrong or injury complained of, by whom the complaint is made, and the facts upon which such complaint is founded. Surely, it cannot be that the district court could, in determining whether the order made was just and reasonable, resort to facts which had never been the basis of complaint before the commissioners, and hence not passed upon or investigated by them. To so hold would, in effect, render nugatory that provision of the law requiring "a statement of the complaint, thus made," to be served upon the defendants.

*2. ——: orders: enforcement by action: jurisdiction.*

It is said by the appellees that the word "jurisdiction" has no proper application, as applied to the power of the commissioners to act. We think it quite immaterial by what name the power which the board has over a subject-matter may be called. By statute, certain powers are conferred upon the board; certain limits are defined within which they may properly act; certain matters are placed within their control. The statute provides as to how they shall proceed. It is said that the law does not require the record before the

board of commissioners to show the facts which constitute the basis of the complaint. It may be that there is no such positive requirement, but it is nevertheless a necessity, clearly growing out of other requirements of the statute. If the appellees' argument is good, then, in all cases where the commissioners act in the absence of a formal complaint filed, there would be no record of a complaint, and hence nothing to serve upon the defendant. The law does not contemplate, neither is it reasonable or just to require, the defendant to defend against a case in the district court which has never been presented to or passed upon by the commissioners. It is the complaint which the board passes upon, and a statement of which is served upon the defendant, that is to be heard in the district court.

If facts may be pleaded in the district court to help out an insufficient complaint, then, in effect, the case is tried upon a complaint on which the defendant has never had an opportunity of being heard before the commissioners. Such a practice would deprive the defendant of a substantial right expressly given it by statute. Section 13, chapter 28, Acts of the Twenty-second General Assembly; McClain's Code, section 2061. If in the proceeding in the district court new grounds of complaint may be pleaded, of what avail is the requirement of the statute that a statement of the complaint, thus made, "shall be forwarded to the defendant?" While technical precision should not be required in proceedings before the board of commissioners, yet, in view of the provisions of the statute, and their manifest intent, it is necessary that the record before the board should show upon what complaint, or state of facts, they were called upon or proceeded to exercise the power with which they are vested; and it is upon such complaint or state of facts that the district court must act. In other words, it is the case, as made before the commissioners, that the court is to

pass upon, and determine whether the order made is reasonable, and not a case that may be made in the district court, by showing that the order is reasonable because of the existence of other grounds not presented to, or considered by, the commissioners. Presumably, because the power of the board was sought to be invoked in a case wherein the complaint failed to show such facts as gave them jurisdiction to act, a demurrer was sustained to the original petition. As the substituted petition, even if it showed such grounds of complaint as warranted the action of the board, a question not now necessary for us to decide, was based upon material grounds of complaint not made before the board, and no statement of which was ever served upon the defendant, such allegations should have been stricken out. The defendant's motion in that regard should have been sustained in both cases. The other grounds of the motion we do not think well taken.

III. The next question is, did the petition state facts entitling the plaintiffs to the relief demanded?

3. ___: ___: reasonableness. The demurrer is now to be treated as applying to the petition as it remains after striking out that part of it which we have held vulnerable to the defendant's motion herein. The petition then, as pruned by the motion, alleged that the plaintiffs were railroad commissioners of Iowa; that the defendant is a carrier by railroad; that Hartley is a station thereon, equipped with depot grounds and side tracks; that the Sunny Hill Alliance is an organization of individuals having in view the shipment of coal and produce over the defendant's road; that it applied for room on the company's side tracks for the erection of a coal shed for its use when shipping coal over the defendant's road, which application was rejected; that the alliance complained to the commissioners, who notified the defendant; that the parties were notified to appear before the commissioners, did so appear,

and on the hearing an order was made granting the application of complainants; compliance therewith was refused by defendant. It is averred that the defendant willfully and unlawfully refused, and relief is prayed for.

Attached to the petition, and made a part of it, is a copy of the. complaint and of the record of the commissioners. It will be observed that the complaint, heretofore set out, does not show for what purpose the alliance wants room for a coal house. Neither is it shown therein that the alliance, at the time of making the complaint, was, or ever proposed to be, shippers of coal over the defendant's line of railroad; nor that they were then, or expected thereafter to be, dealers in coal. Nor does the complaint show that the defendant has any land to grant to any one. It does not show that any discrimination has been practiced. It does not state that the defendant has granted lands to others for a like purpose, nor does it appear from it that any person or persons shipping coal over the defendant's line of railway are occupying ground belonging to the defendant. In fact, the complaint is destitute of almost every statement of fact which it should have contained in order to call for an exercise of power on the part of the commission in the interest of the complainants. No other or further complaint was filed. No facts not stated therein were entered of record by the board as a ground of complaint. It is then clear that, so far as the record shows, no matter of complaint existed which justified the commissioners in acting thereon. No sufficient facts were stated in the complaint on which the order was based to justify it. The petition failed to state facts entitling the plaintiffs to the enforcement of the order, and the demurrer on that ground should have been sustained. The complaint was nothing more than a statement of the fact that complainants wanted a portion of defendant's ground for a coal shed; that

they had been refused, and invoked the aid of the commissioners. If that be sufficient on which to base an order founded on the theory that the defendant had discriminated against the complainants, then every individual in O'Brien county, who makes demand of the defendant for a site for a coal house, and is refused, is discriminated against, regardless of the fact that the person so demanding had never been, and did not propose to be, a shipper of coal over the defendant's road, nor a dealer in it, and no showing that he ever intended to be. The decision of the commissioners says: "It is hereby ordered that the application of complainants be granted." .What application? Why, the application in which it is said complainants "desire room for a coal house site." There is nothing in the record before the commissioners to show that the alliance was then, or proposed to become thereafter, a dealer in coal. Neither does it show that the defendant had ever granted to any one, not a dealer in coal, the right to use its ground for the erection of buildings in which to store coal for his own use. We are not passing upon the question of the right of the commissioners, when a proper case is made, to compel a railroad company to grant to a coal dealer, or to one proposing to deal in coal, the right to erect a coal house on its right of way. No such case is presented here; no sufficient basis has been laid in the complaint for the exercise of the power, if it exists.

IV. Other questions are presented by the demurrer to the petition in the case in which the state is a party. We need consider but one of them. It is insisted that this proceeding cannot be prosecuted by either the state or the commissioners, as it does not involve a matter of public right. Section 1, chapter 133, Acts of the Twentieth General Assembly. As the case as presented by the complainants to the commissioners was not such as to call for an exercise of their powers, it

did not involve a public right, and should not have been prosecuted either by them or by the state. For the reasons heretofore given, the judgment of the district court is REVERSED.