**UNITED STATES ex rel. AMERICAN SILVER PRODUCERS' ASS'N et al. v. MELLON, Secretary of the Treasury et al.**

Court of Appeals of District of Columbia. Submitted February 8, 1929. Decided April 1, 1929.

Motion to Stay Mandate Granted Under Rule 24. April 12, 1929.

No. 4851.

416

J. Harry Covington, Spencer Gordon, and C. S. Thomas, all of Washington, D. C., for appellants..

Leo. A. Rover, E. J. Cunningham, Donald V. Hunter, and Clyde Y. Morris, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. ▮ Appellants, relators below, appeal from a judgment of the Supreme Court of the District of Columbia dismissing their petition for a writ of mandamus to compel defendants, the Secretary of the Treasury and the Director of the Mint, to make purchases of silver under what is known as the Pittman Act. 40 Stat. 535.

Section 1 of the act, among other things, provides: "That the Secretary of the Treasury is hereby authorized from time to time to melt or break up and to sell as bullion not in excess of three hundred and fifty million standard silver dollars now or hereafter held in the Treasury of the United States. * * * Sales of such bullion shall be made at such prices not less than $1 per ounce of silver one thousand fine and upon such terms as shall be established from time to time by the Secretary of the Treasury."

Section 2 provides in part as follows: "That upon every such sale of bullion from time to time the Secretary of the Treasury shall immediately direct the Director of the Mint to purchase in the United States, of the product of mines situated in the United States and of reduction works so located, an amount of silver equal to three hundred and seventy-one and twenty-five hundredths grains of pure silver in respect of every standard silver dollar so melted or broken up and sold as bullion. * * * The net amount of silver so purchased, after making allowance for all resales, shall not exceed at any one time the amount needed to coin an aggregate number of standard silver dollars equal to the aggregate number of standard silver dollars theretofore melted or broken up and sold as bullion under the provisions of this act, but such purchases of silver shall continue until the net amount of silver so purchased after making allowance for all resales, shall be sufficient to coin therefrom an aggregate number of standard silver dollars equal to the aggregate number of standard silver dollars theretofore so melted or broken up and sold as bullion."

Section 3 provides: "That sales of silver bullion under authority of this act may be made for the purpose of conserving the existing stock of gold in the United States, of facilitating the settlement in silver of trade balances adverse to the United States, of providing silver for subsidiary coinage and for commercial use, and of assisting foreign governments at war with the enemies of the United States. The allocation of any silver to the Director of the Mint for subsidiary coinage shall, for the purposes of this act, be regarded as a sale or resale."

It appears that under the terms of section 3 of the act, the Secretary of the Treasury, by formal allocations, allocated a certain amount of silver to the Director of the Mint for subsidiary coinage. These allocations, it is contended, should be regarded as sales or resales under the provisions of section 3 of the act. It is urged that in such cases a mandatory duty was laid upon the Secretary of the Treasury to immediately direct the Director of the Mint to purchase a corresponding amount of silver from American producers at $1 per ounce. These purchases have not been made to take the place of silver so allocated for subsidiary coinage, and it is to compel the defendants by writ of mandamus to make such purchases that this suit was brought.

The court below dismissed the petition on the ground that the relators were not sufficiently interested in the subject-matter alleged to maintain the action. Without considering the merits of the case, we are of opinion that the disposition of the case by the court below can be sustained. The relator, American Silver Producers' Association, is described in the petition as "a corporation organized not for profit under the laws of Utah, the objects and purposes of which are to advise, aid and support legislation and other procedure looking to the lowering of cost of production, reduction and transportation of silver and the orderly marketing of the same, the elimination of discrimination against the industry, and to subserve, promote and protect the interest of all those engaged in the production of silver in the United States and elsewhere, and in that behalf to prosecute any and all lines of activity which may subserve and promote the welfare of the silver mining industry and those engaged therein." A list of the members of the as-

sociation is attached to the petition as Exhibit A. It appears that the members of the association are engaged in the production of silver from mines situated in the United States and in the sale of silver produced from such mines, and in the conduct of reduction works in the United States. The relators, Della S. Consolidated Mines Company and Spar Consolidated Mines Company, are described in the petition as "Corporations organized under the laws of Colorado, and are engaged in the production of silver from mines situated in the United States and in the sale of silver the product of mines situated in the United States and of reduction works so located."

The trial justice, in his able opinion in this case, analyzed the status of the relators as follows:

"It will be observed that the first relator is a mere representative of its component members and as such has no direct financial interest in the purchase of silver since it is avowedly a corporation organized not for profit. The second and third relators may be assumed to be corporations organized for profit, and they are alleged to be engaged in the production of silver and in the sale of silver. Paragraph 13 of the petition, as now amended, states that 'throughout the period from May, 1920, to June, 1923, and continuing to the date hereof members of the relator American Silver Producers' Association have been and they are now ready, willing and able to sell to the said predecessors in office of the defendant Robert J. Grant, Director of the Mint, and to said defendant, silver the product of mines situated in the United States and of reduction works so located at the price of one dollar per ounce.' An examination of the list of the members of the American Silver Producers' Association annexed to the petition shows that neither the second nor the third relator is a member of the American Silver Producers' Association. Nor is it alleged what members of the association have been and are now ready, willing and able to sell as alleged. The second relator, Della S. Consolidated Mines Company, is alleged to have been incorporated December 12, 1925, and to have acquired the entire business and assets of seven other companies the names of which are given, but none of said companies is found in the list of members of the American Silver Producers' Association. It is alleged that the grantors and predecessors in interest of the second relator furnished some of the silver contents of bullion bought by the defendant's predecessor in office between the 1st day of August, 1920, and the 1st day of June, 1925. It is not alleged that either the second or the third relator has any silver which it is ready and willing to sell under said act, but it is alleged, in general terms, as follows: 'The purported revocation of allocations * * * and the continued failure of the defendant Robert J. Grant, and his predecessors, to purchase such silver bullion as required in the Pittman Act has resulted and still results in great loss and injury to the members of the relator American Silver Producers' Association * * * and to the relators Della S. Consolidated Mines Company and Spar Consolidated Mines Company, and to all others similarly situated for which the relators and others similarly situated have no legal remedy except by writ of mandamus as herein prayed.' This general averment of injury can not avail the relators further than it is supported by proper averments of fact."

The relators base their right of action not only on their own interests and the interest of other individuals and corporations producing silver from mines situated in the United States, and the sale of silver from such mines, but also on behalf of the citizens of the United States generally to whom it is alleged the defendants owe the duty of a strict compliance with the terms of the statute. There is no showing that any of the relators would be financially benefited by the issuing of the writ. Neither does it appear that the defendants were under obligation to purchase silver from the relators or that they have any silver which they could sell to the defendants. Not having the necessary legal interest upon which to claim the writ on their own behalf, it logically follows that they are not in position to claim it on behalf of others who might have such an interest. Assuming, for the purpose of argument, though it does not clearly appear from the record, that relators would be indirectly and remotely benefited by the purchase of silver from others, this interest is too indirect and remote to entitle them to the writ. Hines Yellow Pine Trustees v. United States, 263 U. S. 143, 44 S. Ct. 72, 68 L. Ed. 216; United States ex rel. Alsop Process Co. v. Wilson, 33 App. D. C. 472.

While a corporate entity in its personal capacity may be sued for any liability which it incurs, and it may sue in any action necessary for the protection of its property rights, it is exceedingly doubtful if its citizenship, limited to the state of its creation, is such as to permit it to sue in a purely rep-

resentative capacity. As we said in the Alsop Case: "The relator, as a corporate entity, has no interest in the enforcement of duties owing by the Secretary to the public." In Northern Pacific Railroad Co. v. Whalen, 149 U. S. 157, 13 S. Ct. 822, 37 L. Ed. 686, where the railroad company, in a suit for injunction, sought to abate a nuisance, the court held that the right of a corporation to obtain either damages or an injunction must be based on injury to its property.

■ Undoubtedly, before a corporation may maintain an action in mandamus, its interest in the subject-matter of the litigation must be personal and direct, not indirect and remote. This rule of direct interest, however, is controlling in mandamus, whether the action be in the interests of a corporation or a private individual. As was further said in the Alsop Case: "The rule permitting private parties whose rights are directly jeopardized to maintain mandamus to compel a public duty is a salutary one, but it should not be enlarged to such an extent as to permit interference with the operations of the government by those whose rights are only remotely and indirectly affected."

■ Relators in their brief urge that, if they "cannot bring the action, who can? There is and can be no producer who can say with certainty that the silver would be purchased from him rather than from other producers." This admission, in our opinion, ends the case, for, unless such a direct interest, as that which it is admitted cannot be shown, exists, there will be no one entitled to the writ; but the fact that no one else possesses the required interest to entitle him to the writ does not entitle relators to its issuance. Neither does the fact that the United States may create a right in a certain class of individuals against itself imply an obligation to provide a remedy for its enforcement through the courts or otherwise. Dunlap v. Black, 128 U. S. 40, 9 S. Ct. 12, 32 L. Ed. 354; United States ex rel. Ness v. Fisher, 223 U. S. 683, 32 S. Ct. 356, 56 L. Ed. 610; United States

v. Babcock, 250 U. S. 328, 39 S. Ct. 464, 63 L. Ed. 1011.

■ Finally, it is urged that the relator corporations may maintain this action on behalf of the public. Assuming, without admitting, that the corporations have all the political and commercial rights of citizens, they are not in position to maintain an action in mandamus against defendant officers in the interest of the whole people. It is well settled that a citizen and taxpayer is not in position to challenge the constitutionality of a law or restrain its enforcement by the proper officers, though he will be financially injured to the extent of being required to pay larger taxes. Frothingham v. Mellon, 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078.

■ In United States ex rel. Stowell v. Deming, 57 App. D. C. 223, 19 F.(2d) 697, this court said: "The purpose of mandamus is not to establish a legal right but to enforce one already established; hence the legal right of relator to the performance of the particular act of which performance is sought must be clear and complete. It has been said with good reason that the right to its performance must be so clear as not to admit of reasonable doubt or controversy. The right involved must also be substantial, and not a mere abstract right." Applying this rule to the present case, it will be observed that the relator corporations not only fail to disclose a clear and complete legal right, but there is no direct or even indirect financial loss or property damage whatever shown.

■ It is immaterial whether the remedy sought is by injunction or mandamus, whether it is to enforce a law or to restrain the enforcement of a law, the result is the same. The relator to be entitled to relief must be able to show that he will sustain a personal injury by the threatened violation of some positive administrative act, which the official is required by law to perform. Clearly the relator corporations show no such direct interest as to entitle them to the relief sought.

The judgment is affirmed, with costs.