**FRAHN et al. v. TENNESSEE VALLEY AUTHORITY et al.**

No. 452.

District Court, N. D. Alabama, Southern Division.

Oct. 2, 1941.

James L. Orman, of Russellville, Ala., and T. M. Thomas, of Florence, Ala., for plaintiffs.

William C. Fitts, Jr., of Knoxville, Tenn., for defendants.

MURPHREE, District Judge.

This is a proceeding for declaratory judgment based on Section 8(a) of the Tennessee Valley Authority Act of 1933, Title 16, U.S.C.A. § 831g, which provides: "The Corporation shall maintain its principal office in the immediate vicinity of Muscle Shoals, Alabama."

The plaintiffs bring the action as citizens and taxpayers of the communities near Muscle Shoals for themselves and for others similarly situated and ask that a declaratory judgment be entered against the Tennessee Valley Authority and its directors adjudging and holding that they are not complying with the above provision of said Act, and in effect praying that they be made to comply by order of this court.

The petition charges that the defendants maintain only a small building and office force near Muscle Shoals, Alabama; that its principal office as well as its principal place of business are maintained at Knoxville, Tennessee, and at other points in the State of Tennessee, and that the office maintained by defendants at Muscle Shoals, Alabama, is maintained as a subterfuge and that such conduct constitutes an evasion of the Act of Congress.

Defendants have filed a motion to dismiss the petition for failure to state a claim, relying upon two grounds: (1) Lack of legal interest in the plaintiffs to demand judicial relief, (2) lack of judicial power to control the discretion of the executive branch of the government within matters of the primary jurisdiction of the latter.

The question is one of wide public interest to people of Northern Alabama. That the Tennessee Valley Authority in actuality maintains its principal place of business and its general headquarters in the State of Tennessee is a matter of common knowledge. It is probably true that great public benefit would accrue to the Muscle Shoals communities and the people living there if the officers and offices of the Tennessee Valley Authority had been located according to the letter of the Act. The court feels constrained to say that there may have been an interpretation placed upon the quoted provision of the Tennessee Valley Authority Act which was not intended when the Act was adopted by Congress, and doubtlessly, the selection of the personnel of the Board of the Tennessee Valley Authority very greatly influenced the adopted interpretation. However, for reasons which the court will hereinafter set out, the motion of the defendants to dismiss for failure to state a claim must be granted, for the court is without jurisdiction in this proceeding to determine the issue.

The Constitution, Art. 3, § 2, limits the exercise of the judicial power to "cases and controversies". The Declaratory Judgment Act, 48 Statutes 955, known as Declaratory Judgment Act of 1934, 28 U.S.C.A. § 400, extends jurisdiction to federal courts only in cases of actual controversy. The controversy must be justiciable, i. e., it must be definite and concrete touching the legal relationship of parties having adverse legal interests. Aetna Life Insurance Company v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L. Ed. 617, 108 A.L.R. 1000. Therefore, unless the complaint or petition discloses some legal interest in the plaintiffs, no justiciable controversy is presented for decision. The plaintiffs allege neither the violation of a personal contract nor an injury affecting their personal financial rights. It might be argued that if the office of the Tennessee Valley Authority were removed from Tennessee to North Alabama that thousands of dollars would then be spent in the Muscle Shoals area, and that necessarily the plaintiffs, as citizens of that community, would benefit in the general increase of the welfare of the community. The matter would be not only one of personal interest, but of general and public interest. This principle has been recognized in many state courts as applied to the relationship of the taxpayer and citizens of a state, county or municipal government, and the matter of municipal or state expenditures of funds or improvements. The doctrine has been repudiated as between citizens of a particular state and federal authorities or administrative agencies. The courts have uniformly denied sufficient legal interest in private citizens, as such, to enjoin or compel the acts of federal agencies based purely on a showing of public interest and not a direct and immediate financial interest.

Plaintiffs cite the case of Smith v. Franklin County et al., 221 Ala. 136, 127 So. 904, but the court is unable to distinguish the holding of the Federal Court in the cases of Massachusetts v. Mellon, 1923, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, and United States ex rel. American Silver Producers' Association v. Mellon, 59 App. D.C. 24, 32 F.2d 415, 418, certiorari denied, 1929, 280 U.S. 561, 50 S.Ct. 19, 74 L.Ed. 616, from this case. In the latter case a writ of mandamus was sought to compel the Secretary of the Treasury and the directors of the Mint to purchase silver under the provisions of the Pittman Act, 40

Statutes 535. The court there held that the relators were without sufficient interest to maintain the suit, as there was no certainty that the silver would be bought from them rather than from other producers, and that a showing of public interest would not be sufficient. The following excerpt from the opinion of the court will be sufficient to illustrate the point involved:

"Undoubtedly, before a corporation may maintain an action in mandamus, its interest in the subject-matter of the litigation must be personal and direct, not indirect and remote. This rule of direct interest, however, is controlling in mandamus, whether the action be in the interests of a corporation or a private individual. * * *

"Relators in their brief urge that, if they 'cannot bring the action, who can? There is and can be no producer who can say with certainty that the silver would be purchased from him rather than from other producers.' This admission, in our opinion, ends the case, for, unless such a direct interest, as that which it is admitted cannot be shown, exists, there will be no one entitled to the writ; but the fact that no one else possesses the required interest to entitle him to the writ does not entitle relators to its issuance. * * *

"Finally, it is urged that the relator corporations may maintain this action on behalf of the public. Assuming, without admitting, that the corporations have all the political and commercial rights of citizens, they are not in position to maintain an action in mandamus against defendant officers in the interest of the whole people. It is well settled that a citizen and taxpayer is not in position to challenge the constitutionality of a law or restrain its enforcement by the proper officers, though he will be financially injured to the extent of being required to pay larger taxes. * * * *"

In the case of Atlanta v. Ickes, 308 U. S. 517, 60 S.Ct. 170, 84 L.Ed. 440, the plaintiff, City of Atlanta, sought an injunction restraining the National Bituminous Coal Commission and its members from promulgating and enforcing orders fixing minimum prices for the sale of coal, together with a declaratory judgment that the National Bituminous Coal Act was unconstitutional, etc. The three judge District Court, Atlanta v. National Bitu-

minous Coal Comm., 26 F.Supp. 606, granted the defendant's motion to dismiss on the ground that the Act was constitutional and that the Commission was authorized under it to issue minimum price orders applicable to coal purchased by municipal corporations. The Supreme Court of the United States affirmed this holding, but on the ground, in a brief per curiam opinion, that the City of Atlanta was without "legal standing" to maintain the suit, which was in effect a holding that it did not have such legal interest as would present a controversy under the Declaratory Judgment Act.

There are numerous other cases decided recently which are to the same or substantially the same effect. Ashwander v. Tennessee Valley Authority, 1936, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688; Edward Hinds Yellow Pine Trustees et al. v. United States, 263 U.S. 143, 44 S.Ct. 72, 68 L. Ed. 216; Massachusetts v. Missouri, 308 U.S. 1, 60 S.Ct. 39, 84 L.Ed. 3.

The defendants, as a further ground in support of their motion to dismiss the case, contend that the judiciary as such is without power to control the discretion of the executive officers of the government in respect to the interpretation of the statutes which are purely of an administrative nature, wholly within the realm of the executive branch of the government.

Administrative officers and agencies are necessarily vested with the right to exercise their own discretion in interpretation of Acts of Congress affecting their administrative acts. Often times the courts might take issue with the wisdom of the acts of such agencies. They are powerless as a rule to interfere, so long as the interpretation made is in reasonable consonance with the legislation authorizing such acts. On the other hand the interpretation must be a legal and reasonable one and not directly contrary to the mandate of the legislative act. The offices of the Tennessee Valley Authority were established several years before the commencement of this suit and its administrative officers had exercised their discretion and placed their interpretation on the Act of Congress long prior to the institution of these proceedings and the court cannot say that the matter is one requiring the interference by the judiciary with the action of such administrative agents of the executive branch of the government

or that the interpretation placed by the defendants on the quoted provision of the Tennessee Valley Authority Act was such an unreasonable one as to require the interference of this court.

In the case of Massachusetts v. Mellon, supra, Mr. Justice Sutherland in a case involving points at least analogous to this situation said [262 U.S. 447, 43 S.Ct. 601, 67 L.Ed. 1078]:

"The functions of government under our system are apportioned. To the legislative department has been committed the duty of making laws, to the executive the duty of executing them, and to the judiciary the duty of interpreting and applying them in cases properly brought before the courts. The general rule is that neither department may invade the province of the other and neither may control, direct, or restrain the action of the other. We are not now speaking of the merely ministerial duties of officials. Gaines v. Thompson, 7 Wall. 347, 19 L.Ed. 62. We have no power per se to review and annul acts of Congress on the ground that they are unconstitutional. That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act. Then the power exercised is that of ascertaining and declaring the law applicable to the controversy. It amounts to little more than the negative power to disregard an unconstitutional enactment, which otherwise would stand in the way of the enforcement of a legal right. The party who invokes the power must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally. If a case for preventive relief be presented, the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding. Here the parties plaintiff have no such case. Looking through forms of words to the substance of their complaint, it is merely that officials of the executive department of the government are executing and will execute an act of Congress asserted to be unconstitutional; and this we are asked to prevent. To do so would be, not to decide a judicial controversy, but to assume a position of authority over the governmental acts of another and coequal department, an authority which plainly we do not possess."

 The court is convinced that the motions of the defendants to dismiss the petition must be granted for the failure to present a justiciable controversy upon which a declaratory judgment, of the nature prayed for in the petition, may be entered.