636

THOMAS v. VINSON, Secretary of the Treasury.

No. 8792.

United States Court of Appeals District of Columbia.

Argued Oct. 15, 1945.

Decided Jan. 28, 1946.

Mr. J. Austin Latimer, of Washington, D. C., with whom Mr. Julian M. Thomas (in pro. per.), was on the brief for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Mr. Edward M. Curran, United States Attorney, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and ALBERT LEE STEPHENS, Circuit Judge sitting by designation, and EDGERTON, Associate Justice.

ALBERT LEE STEPHENS, Circuit Judge.

Julian M. Thomas claims that certain sums should be paid him out of a special fund in the Treasury of the United States for services and expenses in connection with Pershing Hall, a memorial in France. The District Court refused to issue a requested mandate to the Secretary of the Treasury to make payment. Thomas appeals. (Three other complainants in the District Court have not appealed.)

A corporation known as "American Legion Building, Paris, Inc.," herein called the corporation, was organized in 1928 under the laws of Delaware. Its purpose was to acquire and maintain a building in Paris, France, as a memorial to the American forces in World War I. It purchased a suitable edifice, which was named Pershing Hall, and made extensive alterations thereon. The financial condition of the corporation grew to be extremely serious. Congress, in order to save the building for its intended use, appropriated funds in 1935 for the acquisition of the title to the building by the Government of the United States. Public Act No. 171, 74th Congress, 49 Stat. 426; Public Act No. 260, 74th Congress, 49 Stat. 571, 594. Public Act No. 171 authorized $482,032.92 to be "appropriated by the Secretary of the Treasury *for effecting a settlement of any indebtedness connected with Pershing Hall,* a memorial already erected in Paris, France, under the auspices of the American Legion, Inc., to the commander in chief, officers, men and auxiliary services of the American Expeditionary Forces, to the end that *such memorial as so freed from debt* may be perpetuated." [Emphasis added.] The amount was not to be used until legal title to the property vested in the Government of the United States. Any unused part of the appropriated fund was directed to be invested, the income to be applied to the maintenance and perpetuation of the memorial. Public Act No. 260 was to like effect.[1] Title to the property was acquired in 1936 by the Government of the United States.

Throughout its organization and existence appellant performed various legal services for the Corporation and incurred expenses incidental thereto. He submitted a statement of his fee for those services and expenses to the Special Treasury representative appointed to carry out the provisions of Public Act No. 171.[2] A small

---

[1] Second Deficiency Appropriation Act, fiscal year 1935, Public Act No. 260, 74th Congress, 49 Stat. 571, 594: "* * * That the following sums are appropriated * * *: "For settlement of any indebtedness in connection with Pershing Hall * * *."

[2] To professional services in connection with the formation of the Corporation, holding of first meetings of stockholders, election of directors, drafting of charter and by-laws, first meetings of Directors, etc., November, December, 1927, January, February, March, April, 1928 ..................... $1,500.00
To professional services in re: negotiations for and the purchase and transfer of the building known as Pershing Hall, April, May, June, 1928.. 1,000.00
To services re: negotiations for and consummation of the mortgage with the Credit Foncier de France, January, February, 1932 ............... 300.00
To professional services in connection with the Amendment to the Corporation Charter (in Paris and in the United States), including drafting of amendments, approval by stockholders, conferences with Josiah Marvell, Esq., at Wilmington, Delaware; Scott Lucas, Esq. (National Judge Advocate to the American Legion), at Louisville, Kentucky; also conferences with Senator (later Ambassador) Walter Edge, at Washington, D. C., and Justice Townsend Scudder at Brooklyn, N. Y., September and October 1929 ............ 1,000.00

part of his accumulated fee was paid to him, but no part has ever been paid by the United States nor has the government ever acknowledged an obligation to pay any part thereof. Appellant herein claims $14,-717.00. In 1936 the corporation acknowledged that amount as an "indebtedness connected with Pershing Hall," but of course the acknowledgment does not bind the United States.

The theory upon which appellant presses his suit is that his claim was an indebtedness of the corporation, that the corporation's activities were limited to the acquisition and maintenance of Pershing Hall, and therefore that all debts of the corporation, under the terms of the Congressional Acts, must be considered "indebtedness connected with Pershing Hall." He reasoned that all such debts were payable by the Secretary of the Treasury as his ministerial duty. The Secretary adopting the suggestion of his investigating representative, ruled that the purpose of the statute was not to pay all the debts of the corporation but through compromise or full payment:

"First. To clear the title by discharging all legal encumbrances, such as mortgages, taxes, and liens;

"Second. To settle the balance due for the work and material that actually went into the memorial itself; and

"Third. To pay those who had advanced money as loans for any of these purposes."

Applying this version as to the proper measure for claims submitted to him, the Secretary denied appellant's claims in toto. This litigation followed.

■ Mandamus may compel the performance of a ministerial duty or compel the performance of an act involving discretion, but it cannot direct the discretion. "Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command, it is regarded as being so far ministerial that its performance may be compelled by mandamus, unless there be provision or implication to the contrary. But where the duty is not thus plainly prescribed, but depends upon a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus." Wilbur v. United States, 1929, 281 U.S. 206, 218, 219, 50 S.Ct. 320, 324, 74 L.Ed. 809; 38 C.J., Mandamus, §§ 71–75, pp. 592–602; 34 Am.Jur., Mandamus, §§ 66–70, pp. 854–862; Ferris on The Law of Extraordinary Legal Remedies, §§ 206–211, pp. 238–245; Wood on Mandamus, pp. 64–65.

The Secretary did not decline to act; he acted contrary to appellant's desires. Assuming, as the parties did, that persons claiming under the Acts have the standing or personal interest in the acts sufficient to maintain such an action,[3] the problem pre-

| | |
|---|---|
| To professional services in Paris in connection with the transfer of Pershing Hall from the Corporation to the Government of the United States of America, April to June 1936—July 30 to August 3, 1936.... | 1,000.00 |
| To professional services in connection with the transfer of Pershing Hall from the Corporation to the Government of the United States of America, in Washington, D. C.—50 days at $150.00 per diem, June 10th to July 29th, 1936 inclusive... | 7,500.00 |
| To out-of-pocket expenses; office expenses at Paris office, including telegrams, cables, telephone, postage, translations, stenographic service, incidentals—November 25, 1927, to August 3, 1936, Frs. 25,805.30 at Frs. 15.16 to $1 ........ | 1,702.00 |
| To out-of-pocket expenses in connection with trip to United States (partly connected with Pershing Hall) September 7 to October 15, 1929 (estimated) ...................... | 300.00 |
| To expenses for professional services in United States, June 10 to July 29, 1936, inclusive, including steamship fares, railroad fares, hotels, meals, cab fares, cables, telegrams, telephones, tips, and miscellaneous ...................... | 1,827.00 |
| Total ............... | 16,129.00 |
| Received on account from the American Legion Building, Paris, Incorporated, and from Colonel Francis E. Drake and not included by him in his claims: Frs. 21,413.30 at Frs: 15.16 to the dollar ......... | 1,412.00 |
| Balance due .......... | 14,717.00 |

[3] United States v. Mellon, 59 App.D. C. 24, 32 F.2d 415.

scribed is whether the Secretary's duty to make payments to appellant is "so plainly prescribed as to be free from doubt and equivalent to a positive command," Miguel v. McCarl, 1934, 219 U.S. 442, 54 S.Ct. 465, 466, 78 L.Ed. 901; Lane v. Hoglund, 1917, 244 U.S. 174, 37 S.Ct. 558, 61 L.Ed. 1066; Roberts v. United States, 1900, 176 U.S. 221, 20 S.Ct. 376, 44 L.Ed. 443, or whether his duty involved the exercise of discretion, Wilbur v. United States, supra, and cases cited therein.

■ Under the statute assigning the Secretary a sum of money "for effecting a settlement of any indebtedness connected with Pershing Hall," the Secretary had to determine the nature and scope of the indebtedness mentioned. With the circumstances of the situation in mind the Acts may, with some reason, be interpreted in different ways. In a narrow sense they may refer only to legally enforceable encumbrances. In a broader sense they may include all indebtedness pertaining to the building itself. In the broadest sense they may, perhaps, include any debts of the corporation. There is nothing in the Acts themselves or in the facts surrounding their adoption which indicates with certainty the meaning to be placed upon them. They do not prescribe a plain, understandable and definite ministerial duty. A decision as to their proper construction can be reached by the Secretary only through the exercise of his judgment nad discretion.

The Secretary, as we have seen, adopted an interpretation of the governing statutes, and the interpretation so adopted appears to us as being wholly consistent with the reports of Senate and House Committees to which the subject matter had been assigned. The reports refer only to the indebtedness due on Pershing Hall and make no mention of corporation debts or of incidental, though necessary, expenditures in connection with the government's acquisition of the Hall.[4]

■ The interpretation of the Acts by the Secretary as authorizing the payment only of claims pertaining directly to the memorial building is, we think, logical and reasonable. Certainly the Secretary's duty to pay any of appellant's claims was not "so plainly prescribed [by statute or by the Secretary's construction of the statute] as to be free from doubt and equivalent to a positive command."

■ Appellant appears to believe that the Secretary and the District Court were wrong because, so he argues, it is clear that the Secretary's own formula requires the honoring of appellant's claims. He points out that claims of two French lawyers were honored. But there is no point to the argument. If the services of the French lawyers and those of appellant would seem to one person to be equally legitimate under the Secretary's formula, they very well might not so appeal to others, and the Secretary is given the duty and responsibility of deciding. His decision is legally right if reasonable at all. Furthermore, even if the Secretary were patently wrong in so applying his formula as to include the French lawyers' claims, the fact could not better appellant's position. The question would still be whether or not appellant's claims reasonably come within the scope of the formula.

These points are not greatly important for, as we see it, the Secretary has acted consistently within the terms of his formula. The French lawyers helped to negotiate a compromise settlement with contractors for work performed on the building— one of the prime necessities in "freeing the building of debt."[5] Appellant's services were performed and his expenses were incurred in forming the corporation, in amending its charter, in negotiating the purchase, in arranging for a mortgage on the building and in connection with the transfer of title to our government. None of these services were directed to work or material which had gone into the structure itself. They were incidental to United States Government ownership of the completed building.

Appellant's services, by the investigators' reports, were competent and extensive, but these facts alone could not authorize the Secretary to pay for them out of the funds entrusted to him. We find no reversible error and the judgment of the District Court must be affirmed.

Affirmed.

---

[4] House Report No. 1197, 74th Congress, 1st Session; Senate Report No. 887, 74th Congress, 1st Session; House Report No. 1324, 74th Congress, 1st Session.

[5] Payment was also made for architects' fees, and such payment was similar in principle.

640

GRONER, C. J. (concurring).

Although I feel required, by the well established rule of this court and the Supreme Court in mandamus cases, to concur in the opinion prepared by Judge Stephens, I am nevertheless impelled to place on the record my considered conclusion that the result, to appellant, is a great hardship. He and other patriotic American citizens residing in Paris in 1928 organized a Delaware corporation to provide and maintain in the capital city of France a memorial to the officers and men of the American Expeditionary Forces of the first World War, and to carry out the purpose acquired the building now known as "Pershing Hall," at a total cost, including improvements, of approximately $540,000. The building was dedicated in 1929, but owing to the industrial crisis of that year in the United States, anticipated donations failed to materialize and the corporation was obliged to borrow funds and to mortgage the building.

In 1935 the Congress of the United States, to the end that the plan should not fail, appropriated a sufficient sum of money to pay off the debts and to preserve and maintain the memorial, but on the condition that none of the fund be used until the "legal title to said property shall have been vested in the Government of the United States for the use and benefit of all American officers and enlisted men of the World War * * *." The Act required the Secretary to disburse the appropriation in effecting a "settlement of any indebtedness in connection with Pershing Hall." Unquestionably this designation of the use of the fund is extremely vague and uncertain, and permits the exercise of considerable discretion, and I think it cannot be said to be the equivalent of a command to the Secretary to discharge all debts due by the corporation. Hence, my concurrence in the opinion sustaining the judgment of the lower court. But the hardship grows out of the fact that appellant, both before and after the transfer of the property to the Government, expended money and rendered services in the acquisition of Pershing Hall and its transfer to the United States, for which he has not been paid, and which the corporation acknowledges and the value of which it admits. It cannot be doubted, I think, that for services rendered before transfer of title to the United States, appellant might at any time have got judgment and imposed a lien on the building, which clearly would have been chargeable to the appropriated fund. Equally, it is clear he would not have incurred two or three thousand dollars of travel and maintenance expenses in coming from Paris to the United States, and spending nearly two months here in working out the details of the transfer, if he had known that he must look for reimbursement to a bankrupt corporation whose only asset he was aiding in transferring beyond reach of the law.

No one questions his good faith or the value of his services. The case, therefore, is one in which the United States have taken title to property said to be worth above $700,000, and which Secretary Hull has described as a national monument, which today is being used for the comfort and entertainment of the soldiers of the late war, and with more than a third of the appropriation still in hand and unexpended.

Government counsel tell us that the language of the appropriation is so indefinite that the Secretary might have concluded that appellant's claim should be paid, but that, not having done so, it does not lie in our mouths to impeach the exercise of his judgment. And in this I agree. Nevertheless, it is not improper to note that the uncontested facts of this case bring it well within the spirit of the scriptural admonition—"Thou shalt not muzzle the ox when he treadeth out the corn."