## ELGIN COAL COMPANY
### v.
## The LOUISVILLE AND NASHVILLE RAILROAD COMPANY.

### Civ. A. No. 5065.

United States District Court
E. D. Tennessee, S. D.

Nov. 28, 1967.

---

Sizer Chambliss, Chattanooga, Tenn., William M. Ables, Jr., South Pittsburg, Tenn., for plaintiff.

Spears, Moore, Rebman & Williams, Chattanooga, Tenn., for defendant.

## MEMORANDUM

WILSON, District Judge.

This is an action brought under Part I of the Interstate Commerce Act (49 U.S.C. § 1 et seq.) wherein plaintiff seeks a mandatory injunction to require the defendant to provide certain railroad service beyond the service which plaintiff presently receives from defendant. The case is before the Court upon the plaintiff's motion for a temporary restraining order. However, a jurisdictional issue is immediately presented by the invocation by defendant of the doctrine of primary jurisdiction.

The complaint simply states that the defendant railroad has failed and refused to deliver and pick up coal cars to defendant's tipple as needed and requested by plaintiff while at the same time providing prompt and adequate car service to all other coal tipples in the area. The defendant in its answer denies that it has failed to provide reasonable and adequate car service and denies that it has failed to provide the plaintiff service equal in quality and quantity to that provided to other coal companies in the area. The defendant does contend that if its service has been inadequate or unreasonable, that it is without fault in this respect.

An oral hearing has been had upon the matters set forth in the complaint. The basic facts underlying this dispute are not controverted. The plaintiff is engaged in the business of marketing coal and maintains a tipple in or near the town of Whitwell, Tennessee. The defendant, a common carrier subject to the Interstate Commerce Act, transports the plaintiff's coal from the Whitwell tipple to the various consignees thereof. A siding runs from defendant's main track to the Whitwell tipple. Defendant's regular train crews refuse to operate defendant's trains all the way up the siding to the tipple because of the presence of certain persons in the vicinity of the siding. These persons are retired coal miners who draw pensions from the United Mine Workers of America Welfare Fund. It appears that a number of them gather at the siding each time defendant's train enters for the purpose of protesting the fact that the plaintiff obtains its coal from companies which are not under contract with the U.M.W. of A. and do not pay a royalty unto the U.M.W. of A. Welfare Fund. It appears that this activity has been going on for approximately two years now with the encouragement of the U.M.W. locals, as well as possibly that of the International Union. While no threats have been made against the train crew members by the U.M.W. supporters, the train crew claim that they have reason to fear for their safety if they deliver cars at the siding and the railway brotherhoods support them in their refusal to deliver cars. The defendant has attempted to persuade them to deliver cars but has been unable to do so. Disciplinary action other than persuasion has not been attempted. Instead, since November of 1965 the defendant has used supervisory personnel to deliver all cars to the plaintiff's siding. These deliveries have been made on an average of three times a week, although some weeks only two deliveries have been made. Although trains are operated daily along the main line, the problems and expense involved in getting supervisory personnel in to operate the train at the plaintiff's siding has caused

the defendant to deliver and pick up cars on an average of three times a week rather than daily. It appears that each time a pick up and delivery of cars is made, approximately 40 empty cars are placed on the siding, the maximum number the siding will accommodate. This sometimes results in the plaintiff having an insufficient number of cars to load all coal mined and ready for loading. As the plaintiff has no facilities for storing coal when railway cars are not available for loading, this results in mining operations having to be closed on such days. A further problem is encountered by the plaintiff by reason of not having daily delivery of cars in that its siding will accommodate only approximately 15 cars above the loading tipple. When these have been loaded, the plaintiff must make its own arrangements about pulling other empty cars above the tipple.

Section 1(11) of Part I of the Interstate Commerce Act [49 U.S.C. § 1(11)] provides that:

"It shall be the duty of every carrier by railroad subject to this chapter to furnish safe and adequate car service and to establish, observe, and enforce just and reasonable rules, regulations, and practices with respect to car service; and every unjust and unreasonable rule, regulation, and practice with respect to car service is prohibited and declared to be unlawful."

Section 1(12) places upon a railroad the duty of providing adequate car service among coal companies in the following language:

"It shall also be the duty of every carrier by railroad to make just and reasonable distribution of cars for transportation of coal among the coal mines served by it * * *."

Section 1(14) provides that the Interstate Commerce Commission may establish reasonable rules, regulations, and practices with respect to car service by rail carriers upon hearing.

Section 23 of Part I of the Act confers upon District Courts jurisdiction to issue writs of mandamus under certain circumstances:

"The district courts of the United States shall have jurisdiction upon the relation of any person or persons, firm, or corporation, alleging such violation by a common carrier, of any of the provisions of this chapter * * * as prevents the relator from having interstate traffic moved by said common carrier * * * upon terms or conditions as favorable as those given by said carrier for like traffic under similar conditions to any other shipper, to issue a writ or writs of mandamus against said common carrier, commanding such common carrier to move and transport the traffic, or to furnish cars or other facilities for transportation * * *."

Taking up first the jurisdictional issue, the defendant contends that the reasonableness of the car service provided the plaintiff is a matter exclusively within the jurisdiction of the Interstate Commerce Commission under the primary jurisdiction doctrine. The plaintiff, on the other hand, contends that this Court has jurisdiction under Section 23 of the Interstate Commerce Act as the issue presented in its complaint is not as to the reasonableness of any rule or regulation adopted by the defendant, but rather is whether the defendant has any legal right to discriminate against the plaintiff by failing to provide daily car delivery and pick up service.

■ The doctrine of primary jurisdiction, which originally developed under the Interstate Commerce Act but which now extends to all federal administrative agencies, generally requires that a court not assume jurisdiction to determine a controversy involving a question which is within the jurisdiction of an administrative tribunal prior to decision of that question by the administrative tribunal (1) where the question demands the exercise of administrative discretion requiring the experience, knowledge and services of the administrative tribunal; (2) to determine technical and intricate matters of fact; and (3) where a uniformity of ruling is essential to comply with the purposes of the regulatory stat-

ute administered. 2 Am.Jur.2d, "Administrative Law", Section 788. See also 13 Am.Jur.2d, "Carriers", Section 58.

 The Court is of the opinion that the defendant is correct in its contention that the reasonableness of rail service is a matter for the initial determination of the Interstate Commerce Commission. See Mitchell Coal & Coke Co. v. Pennsylvania Railroad Co., (1913) 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472, particularly at 230 U.S. 255, 33 S.Ct. 919; Pennsylvania Railroad Co. v. Clark Bros. Coal Min. Co., (1915) 238 U.S. 456, 35 S.Ct. 896, 59 L.Ed. 1406; Texas & Pacific Railway v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553; Baltimore & Ohio Railroad Co. v. United States ex rel. Pitcairn Coal Co., 215 U.S. 481, 30 S.Ct. 164, 54 L.Ed. 292; Spence v. Baltimore & Ohio Railroad Co., (C.A. 7, 1966) 360 F.2d 887; Morrisdale Coal Co. v. Pennsylvania Railroad Co., (1913) 230 U.S. 304, 33 S.Ct. 938, 57 L.Ed. 1494. As stated by Justice Brandeis in the case of Great Northern Railroad Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943:

> "Whenever a rate, rule or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the Commission."

The plaintiff appears to rely principally upon the case of Minneapolis & St. Louis Railway Co. v. Pacific Gamble Robinson Co., 8 Cir., 215 F.2d 126, wherein the Court awarded damages for refusal of the railroad to provide any cars unto the shipper at a time when the shipper's place of business was being picketed as a result of a labor dispute. The trial court overruled the defendant's contention that the Interstate Commerce Commission had exclusive jurisdiction. D.C., 105 F.Supp. 794. Apart from the fact that the doctrine of primary jurisdiction vests some discretion in the Court with regard to the jurisdictional issue, the case of Minneapolis & St. Louis Railway Co. v. Pacific Gamble Robinson Co., supra, can be distinguished from the present case in that the railway there declined to furnish the shipper any cars.

In the principal case the issue is not the refusal of the railway to furnish the shipper any cars. Rather, it is the adequacy of the service being rendered. In this regard the shipper's right to as many cars as are needed is not an absolute right and the law exacts only what is reasonable of the railway under all of the existing circumstances.

The Court is accordingly of the opinion that under the doctrine of primary jurisdiction, application to the Interstate Commerce Commission would be a prerequisite to the maintenance of this action in this court. An order will accordingly enter dismissing the lawsuit.