ELGIN COAL COMPANY, Plaintiff-Appellant,

v.

LOUISVILLE & NASHVILLE RAILROAD COMPANY, Defendant-Appellee.

No. 18418.

United States Court of Appeals Sixth Circuit.

June 13, 1969.

**1044**

Sizer Chambliss, Chattanooga, Tenn., William M. Ables, Jr., South Pittsburg, Tenn., on brief, for appellant.

W. D. Spears, Chattanooga, Tenn., H. G. Breetz, R. W. Henriott, Louisville, Ky., on brief, for appellee.

Before PHILLIPS, EDWARDS, and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from an order of the District Court dismissing appellant's suit because it had not previously applied to the Interstate Commerce Commission for relief. The only question presented is whether under the doctrine of primary jurisdiction such application is a prerequisite to the maintenance of this action in the District Court.

The facts as found by the District Judge are adopted.[1] Appellant is engaged in the business of marketing coal and maintains a tipple near Whitwell, Tennessee. Appellee is a railroad subject to the Interstate Commerce Act and transports appellant's coal from the tipple to the persons to whom it has been consigned. From some time in 1965 until February, 1968, appellee's regular train crews refused to provide service to the tipple because of the presence of certain persons near the siding which leads to it. These persons, retired miners receiving pension benefits from the welfare fund of the United Mine Workers of America, gathered at the siding each time a train entered it to protest the fact that appellant obtained coal from com-

---

1. These findings are set forth in the District Court's memorandum opinion which is published in 277 F.Supp. 247 (E.D. Tenn.1967).

panies which were not under contract with the U.M.W. and, therefore, did not pay royalties into its welfare fund.

Although no threats were made against regular train crew members, they claimed that they had reason to fear for their safety if they picked up or delivered cars at the siding and their refusal to do so was supported by the railway brotherhoods. Appellee attempted, unsuccessfully, to persuade the regular crew members to service the tipple but it did not order them to do so or resort to disciplinary action against them for their refusal. Instead, an average of three times per week, it brought supervisory employees from Chattanooga to pick up and deliver cars at the siding. During this time, appellant requested the daily service which had previously been available to it and which was still furnished to other tipples in the area which were not the object of miners' protests.

On September 7, 1967, appellant sought an injunction in the District Court against the reduced service and damages for losses resulting from it, pursuant to 49 U.S.C. § 23.[2] The trial judge dismissed the action because it involved a question of the reasonableness of the service received by appellant and, therefore, should have been presented initially to the Interstate Commerce Commission under the doctrine of primary jurisdiction. Since the District Court's consideration of this case, the protest at the siding has ceased and daily service has been restored. However, appellant still seeks to recover damages for losses incurred during the interruption.

The principles underlying the doctrine of primary jurisdiction were enunciated in Far East Conference v. United States, 342 U.S. 370, 72 S.Ct. 492, 96 L.Ed. 576 (1952):

> The Court thus applied a principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created

by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure. 342 U.S. at 574–575, 72 S.Ct. at 494.

We agree with the District Court that this doctrine generally requires that the Commission make the initial determination whether rail service is reasonable. See Pennsylvania R.R. Co. v. Clark Brothers Coal Mining Co., 238 U.S. 456, 469, 35 S.Ct. 896, 59 L.Ed. 1406 (1915); Great Northern Railway Co. v. Merchants Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943 (1922). Appellant contends, however, that this case does not fall within that rule because on these facts it is clear that *any* reduction in service by appellee would constitute a violation of 49 U.S.C. §§ 1(11) and 1 (12) as a matter of law. We do not agree.

The efforts which a railroad must make in order to provide the reasonable service required by the statute when faced with a refusal by its employees to cross a picket or protest line present difficult questions of policy. Disciplinary action against employees who are supported in their refusal by the railway brotherhoods might provoke a strike which would seriously interfere with the flow of interstate commerce. On the other hand, alternative service by supervisory personnel, which appellee claims is the customary response in the industry to problems of this type, might

---

2. 49 U.S.C. § 23 technically authorizes the issuance of a writ of mandamus.

be economically impractical or seriously disruptive of effective railroad management when provided at the level normally maintained in the absence of labor difficulties. But it is equally important that shippers who are engaged in interstate commerce are not deprived of services on which they rely at the mere whim of railroad employees. It is clear that in the light of these considerations the question should be initially determined by the Commission, both because of its expertise in this field and because of the need for uniformity.

■ Pacific Gamble Robinson Co. v Minneapolis & St. Paul Ry. Co., 105 F. Supp. 794 (D.Minn.1952), modified, 215 F.2d 126 (8th Cir. 1954), relied on by appellant, is distinguishable. There, the trial court determined that the railroad's actions constituted an abandonment of its duty to provide service by *any* standard and, thus, it did not have to weigh the policy considerations discussed *supra* in finding a violation of the statute.[3] 105 F.Supp. at 802. In this case, however, appellee made a substantial effort to provide service by the use of supervisory personnel. We hold that the Interstate Commerce Commission should determine, in the first instance, whether this effort was reasonable service under the circumstances as mandated by the statute.

Also distinguishable is Crain v. Blue Grass Stockyards Co., 399 F.2d 868 (6th Cir. 1968), decided by this court. In that case appellant claimed that he had been excluded from the facilities and services of appellee's stockyards without just and reasonable cause. We stated:

> In our judgment, it does not require administrative expertise to determine whether plaintiff violated rules and regulations and whether, because of such violation, defendants had the right to and did exclude plaintiff * * *.
>
> Questions as to the reasonableness of a rule or regulation should be referred to the * * * [Commission] unless * * * [it] has already decided a similar question or unless the rule or regulation is unreasonable on its face * * *. 399 F.2d at 874.

In this case appellant does not allege violation of a specific rule or regulation, nor, as discussed *supra*, is the practice employed by appellee unreasonable on its face.

Affirmed.

---

3. The statute involved required the railroad to comply with any "reasonable request" for service.