**TAYLOR COUNTY SAND COMPANY,**
**Incorporated, Plaintiff-Appellant,**

v.

**SEABOARD COAST LINE RAILROAD**
**CO., Defendant-Appellee.**

No. 71–1638
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 12, 1971.

* [1] Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Denmark Groover, Jr., W. Thomas Griffith, Byrd, Groover & Buford, Macon, Ga., for plaintiff-appellant.

W. H. Young, Jr., Young, Thompson, Redmond & Young, Columbus, Ga., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

On this appeal we need only decide whether the District Court properly invoked the doctrine of primary jurisdiction in refusing to consider a discrimination complaint prior to its submission to the Interstate Commerce Commission.

Taylor County Sand Company (Shipper) sued Seaboard (Carrier) in a Georgia court for damages and injunctive relief, alleging that railroad cars previously promised to Shipper had been discriminatorily diverted by Carrier to other higher paying customers. Shipper relied, alternatively, on a common law cause of action for discriminatory car service and on a claim for breach of an alleged contract to provide an adequate number of cars. Following removal the District Court concluded that the complaint raised issues of discrimination and of the reasonableness and adequacy of Carrier's car service, thereby dictating initial review by the ICC under the primary jurisdiction doctrine. The Court permitted Shipper 60 days within which to file a complaint with the Commission and, when none was filed, dismissed the action. We affirm.

■ There can be no doubt whatever that the national transportation policy embodied in the Interstate Commerce Act "leaves to the ICC initial responsibility for making fact findings and perhaps the even more decisive task of fashioning a policy which it articulates in terms of a legal standard." Agricultural Transportation Assn. of Texas v. King, 5 Cir., 1965, 349 F.2d 873, 883. Controversies touching interstate commerce or its instrumentalities cannot be resolved satisfactorily unless the independent regulatory agency charged by Congress with primary adjudicative responsibility is first provided with an opportunity to consider the case. Weymouth v. Colorado Interstate Gas Co., 5 Cir., 1966, 367 F.2d 84; J. M. Huber Corp. v. Denman, 5 Cir., 1966, 367 F.2d 104; Louisville & Nashville Railroad Co. v. Knox Homes Corp., 5 Cir., 1965, 343 F.2d 887, 893–895; Flight Engineers' International Assn., A.F.L.–C.I.O. v. American Airlines, Inc., 5 Cir., 1962, 303 F.2d 5. The primary jurisdiction doctrine is thus no more than recognition of the fact that the compelling necessity for regulatory uniformity and consistency, coupled with the almost infinite variety of administrative rules and regulations which affect or may affect a particular dispute, initially require administrative rather than judicial fact-finding and rule-applying expertise. See Far East Conference v. United States, 1952, 342 U.S. 570, 574–575, 72 S.Ct. 492, 96 L.Ed. 576, 582; Tampa Phosphate Railroad Co. v. Seaboard Coast Line Railroad Co., 5 Cir., 1969, 418 F.2d 387, 402 (concurring opinion), cert. denied, 397 U.S. 910, 90 S.Ct. 907, 25 L.Ed.2d 90, cited with approval in Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget, 1970, 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203.

■ Allegations of discriminatory car service fall squarely within this policy. Congress has delegated to the ICC [1] broad authority to "establish reasonable rules, regulations, and practices with respect to car service by common car-

1. Through the Esch Car Service amendments, 49 U.S.C.A. §, 1(10)–(17).

riers."[2] As a result questions of discrimination, of the reasonableness of service, or of the legality of particular practices are all matters to be first considered by the Commission. Thompson v. Texas Mexican Railway Co., 1946, 328 U.S. 134, 147, 66 S.Ct. 937, 945, 90 L.Ed. 1132, 1141; General American Tank Car Corp. v. El Dorado Terminal Co., 1940, 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361; Great Northern Railway Co. v. Merchants' Elevator Co., 1922, 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943, 946; Elgin Coal Co. v. Louisville & Nashville Railroad Co., 6 Cir., 1969, 411 F.2d 1043, 1045.

This result is not affected by the fact, asserted by appellant, that common law remedies for carrier discrimination and breach of contract survive under the Interstate Commerce Act, 49 U.S.C.A. § 9, § 22. Whatever the extent of Carrier's contractual obligations here, they can neither override nor be considered apart from its statutory obligation to provide non-discriminatory service to other shippers.[3] This consideration is particularly relevant in view of Carrier's defense that the alleged contract constitutes an illegal preference in the allocation of cars under the Interstate Commerce Act and infringes on Carrier's statutory duty to make a reasonable physical distribution and allocation of cars among all its customers, regardless of the number demanded by Shipper. In addition, any award of damages for Carrier's alleged contractual breach could have the most unanticipated and far-reaching economic consequences, insofar as the additional cost would be passed on to other shippers and, ultimately, to the consumer. When a determination of the legal rights of the parties is so contingent upon the rights of other shippers and carriers—and the interests of the general public as well—only the ICC is effectively equipped to handle the job.

Affirmed.

2. 49 U.S.C.A. § 1(14).

3. See, e. g., Davis v. Cornwell, 1924, 264 U.S. 560, 44 S.Ct. 410, 68 L.Ed. 848,

invalidating a contract conflicting with the railroad's published tariffs.