**IOWA CITY–MONTEZUMA RAILROAD SHIPPERS ASSOCIATION, a voluntary association, Petitioner,**

v.

**UNITED STATES of America et al., Respondents.**

Civ. No. 10–273–C–2.

United States District Court,
S. D. Iowa, C. D.

Feb. 22, 1972.

Supplemental Memorandum
March 21, 1972.

T. Scott Johnston, U. S. Dept. of Justice, Washington, D. C., for respondents United States, I.C.C. and Dept. of Transportation (Fritz R. Kahn, Hanford O'Hara, I.C.C., Washington, D. C., of counsel for respondent I.C.C.; Robert Lee Kessler, Federal Railroad Administration, Dept. of Transportation, Washington, D. C., of counsel for respondent Dept. of Transportation).

Daniel J. Fay, Stephen M. Morain, Asst. Commerce Counsels, Iowa State Commerce Comm., Des Moines, Iowa, for respondent Iowa State Commerce Comm.

B. A. Webster, J. H. Martin (Gamble Riepe, Martin, Webster & Fletcher), Des Moines, Iowa, D. C. McDevitt, Commerce Counsel, Chicago, Rock Island and Pacific Railroad Co., Chicago, Ill., for respondent Chicago, Rock Island and Pacific Railroad Co.

HANSON, Chief Judge.

This matter comes before the Court upon two motions to dismiss filed July 26, 1971, one by federal respondents, Interstate Commerce Commission ("ICC") and Department of Transportation ("DoT"), and the other by respondent Chicago, Rock Island and Pacific Railroad Co. ("Rock Island"). Respondent Iowa State Commerce Commission ("ISCC") has joined in and adopted federal respondents' motion.

The action sought herein to be dismissed is an action for relief in the nature of mandamus. The sole basis for jurisdiction alleged is the All Writs Statute, 28 U.S.C., Section 1651. Petitioner herein is an association of shippers formed to protest the abandonment of a railroad branch line operated by Rock Island from Hills to Montezuma, wholly within the State of Iowa. Abandonment proceedings are presently pending before the ICC.

In the instant cause, petitioner requests an order requiring the ICC, DoT, ISCC, or any of them, to order the Rock Island to maintain the Hills-Montezuma branch line in a safe and adequate condition pending the determination of the

James H. Malecki (Gislason, Alsop, Dosland & Hunter), New Ulm, Minn., Albion Young, Wellman, Iowa, Norton M. Hatlie, Navarre, Minn., for petitioner Iowa City-Montezuma Shippers' Assn.

Allen J. Donielson, U. S. Atty., Claude H. Freeman, Asst. U. S. Atty., S.D.Iowa, Des Moines, Iowa, L. Patrick Gray III, Asst. Atty. Gen., Harland F. Leathers,

abandonment proceeding, or, alternately, an order requiring the railroad itself to maintain this line pending determination of the abandonment. Petitioner also requests an order requiring the ICC to keep or reopen its records in the abandonment proceeding and to permit petitioner discovery and the right of cross-examination therein.

 Petitioner's sole alleged basis for jurisdiction is 28 U.S.C., Section 1651, which provides for relief in the nature of mandamus, notwithstanding that the writ *per se* was abolished by F.R.Civ.P. Rule 81(b). Relief in the nature of mandamus (hereinafter referred to simply as "mandamus") under Section 1651 must be a necessary or appropriate aid to jurisdiction otherwise conferred by other and original processes. Booker v. Arkansas, 380 F.2d 240 (8th Cir. 1967). It is therefore a traditional means of confining inferior tribunals to their prescribed jurisdiction, of compelling their exercise of authority when it is their duty to act, and of preventing usurpations of the judicial power. Roche v. Evaporated Milk Assn., 319 U.S. 21, 63 S.Ct. 938, 87 L. Ed. 1185 (1943).

 Where mandamus is the only relief sought, and no other basis for jurisdiction is alleged, no jurisdiction is conferred, and there is no judicial power to issue orders in the nature of mandamus, Craig v. California, 376 F.2d 583 (7th Cir. 1967); Newark Morning Ledger Co. v. Republican Co., 188 F.Supp. 813 (D. Mass.1960); cf., also, Knapp v. Lake Shore Ry., 197 U.S. 536, 25 S.Ct. 538, 49 L.Ed. 870 (1905); Marbury v. Madison, 1 Cranch (5 U.S.) 137, 2 L.Ed. 60 (1803), even where the relief sought is for an alleged invasion of a constitutional right. Alley v. Chief, Finance Center, 167 F.Supp. 303 (D.Ind.1958). Such is the case here, for the only basis for jurisdiction alleged is 28 U.S.C., Section 1651.[1]

 The next test that an action for mandamus relief must meet is that there be no other available remedy, United States v. Duell, 172 U.S. 576, 43 L.Ed. 559 (1899); Technitrol, Inc. v. McManus, 405 F.2d 84 (8th Cir. 1968), or available remedies are wholly inadequate, Carter v. Seamans, 411 F.2d 767 (5th Cir. 1969); United States v. Bank of Alexandria, F.Cas.No.14,514 (C.C.D.C. 1801). This means that all administrative remedies must have been exhausted, Sleeth v. Dairy Products Co., 228 F.2d 165 (4th Cir. 1955), or else the agency responsible for regulation of the proceeding must have refused to take jurisdiction, and have been plainly wrong in so refusing. United States ex rel. Kansas City Southern Ry. Co. v. I. C. C., 68 U.S.App.D.C. 396, 98 F.2d 268 (1938). In the instant case there is no allegation of exhaustion of remedies before any respondent herein, nor any indication that petitioner has ever made demand upon any federal or state agency for an order requiring respondent Rock Island to maintain the Hills-Montezuma line in a safe and adequate condition, with concomitant refusal by the agency to act.

 The third test that must be met before mandamus relief can be given is that the case be extraordinary or exceptional, involving unique or compelling circumstances, perhaps a matter of extreme public importance. Bartsch v. Clarke, 293 F.2d 283 (4th Cir. 1961);

---

[1] 28 U.S.C., Section 1361, not alleged by petitioner, provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

However, Section 1361 neither confers any additional jurisdiction, nor eliminates the requirements of Section 1651, Rural Electrification Administration v. Northern States Power Co., 373 F.2d 686 (8th Cir. 1967) cert. den. 387 U.S. 945, 87 S.Ct. 2079, 18 L.Ed.2d 1332, nor does it independently confer jurisdiction on this Court, Carnage v. Sanborn, 304 F.Supp. 857 (N.D.Ga.1969). Furthermore, as noted *infra*, 28 U.S.C., Section 1361 would be inapposite in any event, since no discernable duty is either imposed or owed to petitioner herein.

Hydraulic Press Mfg. Co. v. Moore, 185 F.2d 800 (8th Cir. 1950). Petitioner herein does allege such circumstances as to the continued deterioration of the railroad, in Paragraph 4 of its complaint.

The next caveat, of particular relevance to petitioner's third requested order, is that mandamus cannot be invoked in lieu of an interlocutory appeal of any order which does not impair jurisdiction, Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953); Carr v. Donohoe, 201 F.2d 426 (8th Cir. 1953), save perhaps in extraordinary circumstances. Evans Electric Const. Co. v. McManus, 338 F.2d 952 (8th Cir. 1964). Usually, however, appeal must abide the fact and not be anticipated interlocutorily, for it is entirely possible that a complainant's position will be vindicated by the agency's final order. Cf. National Lawyer's Guild v. Brownell, 96 U.S.App.D.C. 252, 225 F. 2d 552 (1955), cert. den. 351 U.S. 927, 76 S.Ct. 778, 100 L.Ed. 1457 (1956). Here, any invasions of petitioner's rights are not so apparent or damning that the matters of discovery and cross-examination in the abandonment proceeding cannot abide a final order of the ICC. It is quite possible that that order will be favorable to petitioner, thus mooting the procedural question. If it is not, petitioner may then proceed to seek judicial review in the manner prescribed by 28 U.S.C., Section 1336,[2] without perhaps involving this Court in an idle ceremony, and without offending the precepts of Banker's Life & Cas. Co. v. Holland, supra, and U. S. Alkali Export Assn. v. United States, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945), which indicate that hardships resulting from waiting for a final administrative order are an immaterial consideration in determining whether a case is suitable for interlocutory review. Consequently, the Court must dismiss petitioner's action to the extent that it requests an order requiring the ICC to keep or reopen the record in the abandonment proceeding, and to permit discovery and cross-examination therein.

The fifth major requirement for relief in the nature of mandamus is that the act sought to be compelled is not discretionary, but is a ministerial duty, Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed. 2d 788 (1958); M'Intire v. Wood, 7 Cranch (11 U.S. 504, 3 L.Ed. 420 (1813), a clear and indisputable peremptory command to act. United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 51 S.Ct. 343, 75 L.Ed. 1429 (1931). This duty must be plainly defined and completely free from doubt, Thomas v. Vinson, 80 U.S.App.D.C. 346, 153 F.2d 636 (1945). The burden is upon the party seeking mandamus relief to clearly establish that an action sought to be compelled is a ministerial duty, Albert v. U. S. District Court, 283 F.2d 61 (6th Cir. 1960); Hancock v. Laird, 415 F.2d 234 (9th Cir. 1969), and furthermore that he has a clear right to the performance of that duty. Kay Ferer, Inc. v. Hulen, 160 F.2d 146 (8th Cir. 1947).

An administrative agency such as the ICC, DoT, or ISCC can be compelled to exercise the power vested in it, or to take some action in some matter involving discretion where there is a clear duty to do so, although the nature of the action taken is beyond the purview of the court. Rural Electrification Administration v. Northern States Power Co., supra, note 1; Higginson v. Schoeneman, 89 U.S.App.D.C. 126, 190 F.2d 32 (1951). However, inaction on the part of an administrative agency may well be within the purview of agency discretion, and so not subject to mandamus, where responsibilities for a particular subject area have been entrusted to the agency without any plainly defined mandate to act, or where construction or application of a particular statute have been

2. 28 U.S.C., Section 1336 in no way can be said to confer jurisdiction on the present state of the record, since "order" therein means only final orders and not interlocutory or procedural orders, Michigan Public Service Comm'n. v. United States, 162 F.Supp. 670 (W.D.Mich.1958).

left to agency discretion. United States ex rel Girard Trust Co. v. Helvering, 301 U.S. 540, 57 S.Ct. 855, 81 L.Ed. 1272 (1937); Rural Electrification Administration v. Northern States Power Co., *supra*, note 1; Anderson v. McKay, 94 U.S.App.D.C. 11, 211 F.2d 798 (1954).

■ Here, the Court is unable to discern any clear and indisputable ministerial duty on the part of any respondent governmental agency as to any of the statutes cited by petitioner in its complaint, or any other. 49 U.S.C., Section 1(11), part of the Interstate Commerce Act of 1887, prescribes that:

> It shall be the duty of every carrier by railroad . . . to furnish safe and adequate car service and to establish, observe, and enforce . . . practices with respect to car service; and every unjust and unreasonable . . . practice with respect to car service is prohibited and declared to be unlawful.

Pursuant to 49 U.S.C., Section 12, the ICC is "authorized and required" to enforce the above provision which, by 49 U.S.C., Section 1(10), deals with "the use, control, supply movement . . . of locomotives, cars, and other vehicles . . . by any carrier by railroad." Although conceivably this could cover the state of repair of the Hills-Montezuma branch line,[3] such a determination is initially to be made by the ICC itself, in the light of any relevant judicial decisions such as Peoria & Pekin Union Ry. Co. v. United States, 263 U.S. 528, 44 S.Ct. 194, 68 L.Ed. 427 (1924), utilizing its own expertise and discretion. It is not at this time a proper subject for the Court's consideration. Elgin Coal Co. v. Louisville & Nashville R.R. Co., 411 F.2d 1043 (6th Cir. 1969), and the Court cannot say that the Interstate Commerce Act has imposed on the ICC such a clearly defined duty to act that no discretion remains, such that relief in the nature of mandamus is permissible. Cf. United States ex rel. Kansas City Southern Ry. Co. v. I. C. C., 68 U.S.App.D.C. 396, 98 F.2d 268 (D.C.Cir.1938). Petitioner's remedy, therefore, lies with the ICC under 49 U.S.C., Section 13, which procedure petitioner herein seeks to bypass. Consequently, because this Court lacks an independent basis for mandamus jurisdiction, because petitioner has other administrative remedies available, and because the action sought to be compelled is not a ministerial duty owed to petitioner, that portion of this action requesting an order requiring respondent Interstate Commerce Commission to order respondent Rock Island to properly maintain its Hills-Montezuma branch line must be dismissed.

■ Another enactment as to which petitioner asks this Court to order enforcement by respondent Department of Transportation is the Railroad Safety Act of 1970, 45 U.S.C., Section 421 et seq. Under this enactment, the Secretary of Transportation[4] is required by 45 U.S.C., Section 431(a)(1) to "prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety." 45 U.S.C., Section 431(e) requires the Secretary to have promulgated such standards by Oc-

---

3. Petitioner has given indications that the poor condition of the branch line in question has caused significant disruptions of car service.

4. The Court notes that the Railroad Safety Act is directed not to the Department of Transportation, respondent herein, but to the *Secretary* of Transportation. Courts will indulge the fiction that a suit against a government officer is not a suit against the sovereign, Scholder v. United States, 428 F.2d 1123 (9th Cir. 1970), such that an action may be commenced against administrative officials acting wrongly, although not against the United States *eo nomine* or an agency thereof, M.G. Davis & Co. v. S.E.C., 252 F.Supp. 402 (S.D.N.Y.1966). Plaintiff has herein incorrectly sued the United States *eo nomine*, the Interstate Commerce Commission, the Department of Transportation and the Iowa Commerce Commission. However, respondents have chosen not to contest this point, although indicating that they are aware of it, and in the light of the disposition of this cause on other grounds, it will be unnecessary to further burden the issue.

tober 16, 1971, some 4½ months subsequent to the commencement of this action. It is thus difficult for the Court to see the relevance if this enactment to this cause of action as of the time of commencement thereof. However, assuming that petitioner's request for relief in this Court is a continuing one, the Court notes that 45 U.S.C., Section 438(c) states that any railroad violating the regulations promulgated under the Act *shall* be assessed the applicable civil penalty by the Secretary of Transportation. This specific language seems to admit of *no discretion on the part of the Secretary*, although 45 U.S.C., Section 436 seems to contemplate situations where the Secretary fails to impose the penalty. It is not necessary, however, for the Court to rule upon the discretion given the Secretary in this regard, for a civil penalty is not the relief petitioner seeks; rather an order requiring the Rock Island to maintain its right of way is what is requested. Such orders are not directly contemplated by the Railroad Safety Act, and the requirement of 45 U.S.C., Section 431(a) that the Secretary of Transportation promulgate general rules and regulations would appear to render specific orders to each railroad for each violation wholly superfluous, *and any order that this Court might issue to respondent DoT to force such an order likewise an idle ceremony.* As to enforced compliance with the rules as promulgated (as distinguished from civil penalties for violations thereof), 45 U.S.C. Section 439 provides that the Secretary of Transportation can seek an injunction in United States District Court. This statute *contains no language of compulsion as is found in 45 U.S.C., Section 438(c),* and is of an enabling nature only. Therefore, this Court must hold that such a procedure is discretionary, and is not therefore subject to mandamus relief.

▮▮▮ In regard to the Railroad Safety Act, the Court further notes that the purpose of the Act is the promotion of safety and the reduction of accidents. The thrust of petitioner's complaint,

however, is the deterioration of railroad service, an entirely different proposition. In this light, the Court is unable to discern any clear duty owed *to the petitioner herein,* a necessary requirement for mandamus relief.

The Court is unable, after careful search, to find any other enactments creating some statutory duty in either the Department of Transportation or the Secretary thereof. Consequently, because this Court lacks any independent basis for mandamus jurisdiction as discussed, *supra,* because other remedies are available, as previously set forth, because the action demanded of the agency is either discretionary as to one procedure, or superfluous as to another, because there is no duty owed to this Petitioner under any enactment by either respondent Department of Transportation or by the Secretary thereof, which duty has not been wholly fulfilled by the promulgation of rules and regulations required by 45 U.S.C., Section 431 (a)(1), and because any order of this Court requiring this respondent to order respondent Rock Island to maintain its branch line in question in a safe and adequate condition in view of the rules and regulations already promulgated would be superfluous, that portion of this action requesting an order to respondent Department of Transportation relative to Rock Island's Hills-Montezuma branch line must be dismissed.

The third and final enactment that petitioner seeks to have this Court order enforced by respondent Iowa State Commerce Commission is Section 474.12 of the Iowa Code, which states:

> It [ISCC] shall from time to time carefully examine into and inspect the condition of each railroad, its tracks, bridges, and equipment, and the manner of its conduct, operation, and management with regard to the public safety and convenience in the state. If found by it unsafe, it shall immediately notify the railroad company whose duty it is to put the same in repair, which shall be done by it within such time as the commission shall

fix. If any corporation fails to perform this duty the commission may forbid and prevent it from running trains over the defective portion while unsafe.[5]

Although the language in this section appears to be peremptory in part, the modification of "shall" by "from time to time" seems to indicate to the Court that determinations of when examinations and inspections are to be made are, at least at the outset, a matter for the ISCC to determine for itself. Cf. Elgin Coal Co. v. Louisville & Nashville R.R. Co., *supra;* State v. Chicago, Milwaukee & St. Paul R. Co., 86 Iowa 641, 53 N.W. 323 (1892). Furthermore, upon such examination and inspection, determinations of safety are wholly discretionary with the ISCC. Thus, petitioner's *proper* remedy appears to be with the ISCC under Iowa Code 474.34, a procedure which petitioner has hitherto ignored.

▮▮▮▮ Even assuming, *arguendo,* that the responsibilities of the ISCC with respect to Section 474.12 are ministerial duties and not discretionary considerations, mandamus would still be an impossible federal remedy. First of all, Iowa Code, Chapter 661, confers a far broader state right to mandamus relief than any available in this Court, and furthermore, petitioner is not, in the state courts, limited to seeking mandamus relief. As noted supra, it might initiate a complaint under Iowa Code, Section 474.34, or it might commence proceedings for summary relief in state court under Iowa Code, Section 474.38. If safety of bridges is involved, it might bring an action for damages under Iowa Code, Section 477.2, and if failure to provide adequate car service under Iowa Code, Section 479.3, the functional Iowa equivalent of 49 U.S.C., Section 1(11),

is the complaint, an action for damages may be commenced under Iowa Code, Section 474.33. The ready availability of such state remedies against a state agency should alone cause this Court to dismiss this action as to this respondent. Secondly, an independent basis for mandamus jurisdiction is required, as noted *supra.* In this cause the Court is wholly unable to discern any such independent basis, Third and finally, federal courts have no authority to direct mandamus to state officials in the performance of their duties. Graham v. Norton, 15 Wall. (82 U.S.) 427, 21 L.Ed. 177 (1873); Haggard v. Tennessee, 421 F.2d 1384 (6th Cir. 1970). Such lack of authority in this court, together with the multiplicity of state remedies available, the lack of any colorable *independent* basis for federal jurisdiction, and the absence of a clearly mandated ministerial duty, particularly one owed to this petitioner under any Iowa statute (not only the one petitioner seeks to invoke) compel only one conclusion, that the portion of this action directed to respondent Iowa State Commerce Commission must be dismissed.

▮▮▮ One complaint for mandamus relief remains, that requesting an order directly requiring respondent Chicago, Rock Island and Pacific Railroad Co. to maintain its ways and bridges in a safe and adequate condition. As to this, the Court cannot see *any* basis for jurisdiction, or any authority in any statute, law or treaty to issue such an order. The Interstate Commerce Act, 49 U.S.C., Section 1 et seq., is to be enforced, in the first instance, by the Interstate Commerce Commission, with resort to this Court *only* pursuant to 49 U.S.C., Section 16, 28 U.S.C., Section 1336 or 5 U.S.C. Ch. 7, after final order. The Railroad Safety Act, 45 U.S.C., Section 421 et

5. 45 U.S.C., Section 434, of the federal Railroad Safety Act provides for preemption of state railroad safety enactments where federal safety standards under the Act are more strict. Since, as will be seen, no remedy exists in this Court as to the ISCC prior to preemption, it is unnecessary to determine just what standards and duties of the ISCC have been preempted. Thus, the Court will assume for the purposes of discussion that Sections 474.12 and 477.2 of the Iowa Code have not been preempted, as the result herein would be compelled whether or not preemption has occurred.

seq. is to be enforced by either the Secretary of Transportation or ISCC, with resort to this Court *only* pursuant to 45 U.S.C., Sections 431(f), 436, 438(c) or 439(a). No statute, treaty or Constitution of the United States, nor any statute of the State of Iowa confers on this Court the power to order a public utility either upon the complaint of a citizen or group thereof, or *sua sponte*, to maintain its right of way in a safe and adequate condition,[6] by relief in the nature of mandamus or otherwise. Even if this were not the case, as more particularly to the mandamus remedy requested, relief as to this respondent would still be inapposite, since petitioner has not met the requirements that there be an independent basis for jurisdiction, and that there be no other available remedy, since as discussed, *supra*, petitioner's remedies lie with the respective administrative agencies or as prescribed by the Iowa Code. For these reasons, petitioner's complaint as to respondent Chicago, Rock Island and Pacific Railroad Co. must likewise be dismissed.

In the light of the above memorandum, it is, accordingly ordered that the motion to dismiss filed in the above-entitled cause by federal respondents, Interstate Commerce Commission and Department of Transportation, and joined in by respondent Iowa State Commerce Commission be and the same is hereby granted.

It is further ordered that the motion to dismiss of respondent Chicago, Rock Island and Pacific Railroad be and the same is hereby granted.

It is further ordered that the complaint in the above-entitled action be and the same is hereby dismissed.

It is further ordered that in the light of the above, the motion for summary judgment filed by petitioner Iowa City-Montezuma Shippers' Association herein be and the same is hereby denied as moot.

It is further ordered that costs in the above entitled action be taxed wholly to plaintiff herein.

### SUPPLEMENTAL MEMORANDUM AND ORDER

Upon reconsideration and oral argument in the above-entitled action, Petitioner has again attempted to convince the Court that it has jurisdiction to afford petitioner the relief that it seeks. The arguments used in support of that contention will be considered *seriatim*.

 Petitioner's first argument is that this Court has jurisdiction to intervene where irreparable injury is threatened, especially in matters of public importance, notwithstanding the fact that matters are still pending before an administrative agency. In support of its argument, petitioner places primary reliance on F. T. C. v. Dean Foods Inc., 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966). *Dean* recognizes

"a limited judicial power to preserve the court's jurisdiction or maintain the *status quo* by injunction pending review of an agency's action through the prescribed statutory channels. . . Such power has been deemed merely incidental to the court's jurisdiction to review final agency action. . . . This grant includes the traditional power to issue injunctions to preserve the *status quo* while administrative proceedings are in progress and prevent impairment of the effective exercise of appellate jurisdiction." [384 U.S. at 604, 86 S.Ct. at 1742, 1743, citing Arrow Transp. Co. v. Southern R. Co., 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963) and Continental Ill. Nat'l. Bank v. Chicago, R. I. & P. R. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L. Ed. 1110 (1935)].

Petitioner's reliance is misplaced, however, for a number of reasons. First of all, *Dean* involved an application for mandamus relief *by the agency itself*, to

---

6. Barring, of course, the inconceivable situation where some civil rights violation under 42 U.S.C., Section 1983, results therefrom.

preserve its own functional jurisdiction, not an application by some party engaged in an agency proceeding and aggrieved thereby. Secondly, if relief was not granted in *Dean*, the subject matter of the agency proceeding would irrevocably disappear before the final adjudication by the F.T.C., making it wholly impossible for the agency to devise a meaningful remedy. Here, there is no question of irrevocable disappearance of the railroad line in question so long as the respondent railroad does not attempt to close down operations and divest itself of the right of way. However horrendous the condition of the Hills-Montezuma branch line, it will still be possible, if the I.C.C. determines not to permit abandonment, to put the line back into excellent operating condition,[1] so that the I.C.C., or any other appropriate agency might still issue meaningful orders with regard to the line, irrespective of the outcome of this action. Thirdly, *Dean* was a case where the act sought to be enjoined, the absorption of one major dairy by another, was certified by the administrative agency to be a likely violation of law, without adequate alternate legal recourse by the agency. Here, on the other hand, there has been no such certification of illegality. Indeed, petitioner has utterly failed, as the Court noted in its prior opinion, to institute any kind of complaint of illegality pursuant to 49 U.S.C., Section 13, or any other state, federal or local enactment. Furthermore, the respondent agencies, in their discretion, have ample legal powers to deal with unsafe and inadequate conditions on the railroad line in question.

Arrow Transp. Co. v. Southern Ry. Co., supra, cited in *Dean* and relied upon by petitioner, not only provides no comfort for its position, but appears to significantly undermine it.[2] Although recognizing the viability of the proposition in *Dean, supra, Arrow* points out, with respect specifically to the Interstate Commerce Commission, that the limited power to preserve the Court's jurisdiction or maintain the *status quo*

> has never been recognized in derogation of such a clear congressional purpose to oust judicial power as that manifested in the Interstate Commerce Act. [372 U.S. at 671, 83 S.Ct. at 991]

*Arrow,* recognized that allowing the procedure herein sought

> would permit a single judge to pass before final Commission action upon [a question] which the statute [28 U.S.C., Section 1336] expressly entrusts only to a court of three judges reviewing the Commission's task,

would involve all sorts of hazards resulting from judicial intrusion upon the administrative domain, and finally would adversely affect the Congressionally desired uniformity attendant upon a body of decisions by one unified agency.

Petitioner finally cites in support of his first contention U. S. Alkali Export Assn. v. United States, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945) and Banker's Life & Cas. Co. v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953). Neither case supports that contention; and both, as this Court has previously noted, intimate that petitioner's hardship is an immaterial factor for consideration in ruling upon the motion to dismiss. *Banker's Life,* holding that mandamus is inappropriate to review a ruling on a motion for transfers, notes that the sort of reasoning used by petitioner would result in interlocutory appeal, via the mandamus remedy, of every interlocutory ruling which a party feels is detrimental to his case. *U. S. Alkali*

---

1. It appears from documents already filed in this cause that major reconstruction of the branch line would be required within a few years regardless of the present degree of maintenance.

2. Continental Ill. Natl. Bank v. Chicago R. I. & P. R. R. Co., supra, also cited in

*Dean*, deals with the ability of a bankruptcy court to enjoin disposition of a bankrupt's assets held by a creditor in order to preserve the viability of the bankruptcy proceeding, and is likewise of no value as precedent here.

*Export Assn.* further notes that the question, as here, is really one of propriety of the exercise of jurisdiction in the light of Congressional mandates as to the respective spheres of courts and administrative agencies, and the avoidance of conflicts between them. As the Supreme Court therein noted, and as this Court notes here, if petitioner is correct in his assertions, Congressional intent to avoid piecemeal review and to have uniform treatment of a subject would be thwarted, agency investigation (and indeed the entire regulatory agency concept) would be precluded, and substantive Congressional purposes and policies would be defeated. Therefore, the Court cannot find any compulsion in the argument that this Court should act to preserve an unendangered *res*, notwithstanding the present ability of administrative agencies to act.

Petitioners' second argument is that during the pendent abandonment proceedings, respondent Iowa State Commerce Commission is without authority to act, and so petitioner is without remedy from that source. This argument appears to the Court to only concede the validity of the action of the Court with respect to the ISCC, since petitioner obviously cannot expect the Court to order an agency to do something it confessedly has no authority to do.

■ Petitioner's third argument, thoroughly explored at hearing, is that petitioner's administrative remedies have been exhausted, despite the fact that no final order has yet been forthcoming from the Interstate Commerce Commission, and the fact that petitioner excepted to the recommended decision of the Hearing Examiner. Although it is true that it would not be required for petitioner, upon a *final* ICC order, to petition for

reconsideration before perfecting its appeal under appropriate statutes, or to apply to the agency for a final declaratory order, 5 U.S.C. Section 704, Levers v. Anderson, 326 U.S. 219, 66 S.Ct. 72, 90 L.Ed. 26 (1945), it is likewise true that the agency decision be final, and petitioner must await that finality, pursuant to 49 C.F.R., Section 1100.97 (Rule 97), before seeking judicial intervention, Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947). That the ICC has made some findings does not matter, as review on that basis "would delegate greater effect to such an administrative process than the process itself warrants," Arrow Transp. Co. v. Southern Ry. Co., supra, 372 U.S. at 672, 83 S.Ct. at 991, and is inconsistent with the requirement of action *by the ICC*, not by a hearing examiner employed thereby.

■ The fourth argument advanced by petitioner is that respondent railroad has abdicated its duty as a common carrier by failing to keep its branch line safe and operable until permitted to abandon, notwithstanding the pendency of the abandonment proceeding, and that mandamus is the appropriate remedy therefor. None of the cases cited and quoted by petitioner in its brief support that contention. All save one came before the Court upon an appeal from the ruling of some agency charged with the regulation of a public utility,[3] thus implicitly recognizing the view of Elgin Coal Co. v. Louisville & Nashville R. R. Co., 411 F.2d 1043 (6th Cir. 1969) that the appropriate approach to the problem facing petitioner involves initial petition to one or another of the agencies charged with regulating respondent railroad, with recourse here only upon appeal of the decision reached by that agency.[4]

3. The sole exception is Lowden v. Denton, 110 F.2d 274 (8th Cir. 1940), a tort case, which sets out the duties of the railroad to the public to keep its facilities in safe condition and repair, lest someone be injured. Although it is possible for petitioner here to perhaps seek damages in tort for wrongs done by re-

spondent railroad, such is by no stretch of the imagination the action here.

4. Fort Smith Light & Traction Co. v. Bourland, 267 U.S. 330, 45 S.Ct. 249, 69 L.Ed. 631 (1925) was, in fact, an appeal from an administrative ruling on abandonment adverse to the petitioning railroad.

Both Atlantic Coast Line R. R. v. N. C. Corporation Comm'n., 206 U.S. 1, 27 S.Ct. 585, 51 L.Ed. 933 (1907) and Chesapeake & Ohio Ry. Co. v. Public Service Comm'n. of W. Va., 242 U.S. 603, 37 S.Ct. 234, 61 L.Ed. 520 (1917) dealt with appeals by the respective railroads of adverse rulings by respondent regulating agencies, on the basis that these rulings were so unreasonable and arbitrary as to be a deprivation of property without due process or that the power exerted by the regulatory agency was so beyond the legislative power as to be a taking without due process. Neither raised the issue herein argued by petitioner, that an action might be directly taken against the respondent railroad, although both cases agreed that such a railroad is under a duty, *enforceable by some regulatory agency*, to provide reasonably adequate facilities to serve the public, such duty arising out of the acceptance of the responsibilities of a state franchise, and enduring until that franchise is wholly surrendered, and further that in the performance of that duty, an agency may compel a railroad, under some circumstances, to incur a pecuniary loss in performing that duty, as the ICC here might herein compel respondent railroad to wholly reconstruct the Hills-Montezuma branch line if abandonment is denied, notwithstanding the cost.[5]

United Fuel Gas Co. v. R. R. Comm'n. of Ky., 278 U.S. 300, 49 S.Ct. 150, 73 L.Ed. 390 (1929) likewise points up the key role of the regulatory agency, dealing with the power of respondent therein to compel continued service at the rates it specified. As such, it deals primarily with the fairness of the rates prescribed, although it does hold, at 309, 49 S.Ct. at 152:

> The primary duty of a public utility is to serve on reasonable terms all of those who desire the service it renders. This duty does not permit it to pick and choose and to serve only those portions of the territory which it finds most profitable, leaving the remainder to get along without the service which it alone is in a position to give. An important purpose of state supervision is to prevent such discriminations.
>
> · · ·

Such is not the case here, for petitioner has not asserted that it is the victim of a discriminatory abandonment of an unprofitable portion of the Rock Island's trackage, but only of the progressive deterioration of that line.[6] The problem is thus dissimilar from that in Meyers v. Jay Street Connecting R. R., 259 F.2d 532 (2d Cir. 1958) and 288 F.2d 356 (2d Cir. 1961), where defendant railroad, without permission from any state or federal agency, abruptly ceased operations, for herein there is no allegation by petitioner that the Rock Island has refused to handle its shipments, an action which might provide the basis for an action for damages, as well as for injunctive relief pursuant to 49 U.S.C., Sections 1(18), and 1(20).[7] It is thus clear that petitioner is incorrect in its fourth contention that mandamus may issue from the Court against the railroad alone, notwithstanding the pending abandonment proceeding; rather it is from the regulatory agencies that petitioner, at least under the presently alleged state of affairs, must seek its remedies.[8]

---

5. "The fact that the company must make a large expenditure in relaying its tracks does not render the order void. Nor does the expected deficit from operation affect its validity." Fort Smith Light & Traction Co. v. Bourland, 267 U.S. at 332, 45 S.Ct. at 250.

6. Petitioner concedes that trains run on the branch line in question, however shoddy service may be.

7. Petitioner herein seeks mandamus, not injunctive relief, and has not alleged 49 U.S.C., Sections 1(18) or 1(20) as a basis for jurisdiction.

8. 49 U.S.C., Section 23, asserted by petitioner in its amended complaint, adds nothing to its contentions, since there is no discernable allegation of discrimination against petitioner herein. If petitioner is being discriminated against, or if it

Petitioner's final contention is that this case is not one that requires the exhaustion of administrative remedies, since the question is not one requiring "the exercise of discretion or application of expertise" and since extreme hardship might result from awaiting the decision of the ICC. This proposition was enunciated in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) and reaffirmed in McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971). The McKart doctrine, however, is not directed to the same exhaustion of administrative remedies doctrine applicable to the instant case, whereby judicial review is deferred until administrative proceedings are a finality, but to the much more onerous exhaustion doctrine peculiar to Selective Service cases, whereby a draftee who fails to exhaust his remedies within the Selective Service System is precluded from judicially asserting his complaint, except as incident to his criminal prosecution. Furthermore, this Court has previously noted that the actions of the ICC with respect to the Hills-Montezuma branch line *are* discretionary, and do involve the application of a great deal of expertise to a great number of relevant factors, cf. Chesapeake & Ohio Ry. Co. v. Public Service Comm'n., *supra*, a process which is not yet concluded.

This Court will in summary subscribe to the precepts on exhaustion set out in McKart, 395 U.S. at 194–195, 89 S.Ct. at 1662–1663:

It is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit

the parties to seek aid from the courts at various intermediate stages.´ . .

The administrative agency is created as a separate entity and invested with certain powers and duties. The courts ordinarily should not interfere with an agency until it has completed its action, or else has clearly exceeded its jurisdiction. As Professor Jaffe puts it, "the exhaustion doctrine is, therefore, an expression of executive and administrative autonomy." This reason is particularly pertinent where the function of the agency and the particular decision sought to be reviewed involve exercise of discretionary powers granted the agency by Congress, or require application of special expertise.

. . .

Certain very practical notions of judicial efficiency come into play as well. A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

The Court will, accordingly, on reconsideration reaffirm the Judgment previously entered in this cause, dismissing the Complaint.

Wherefore, it is ordered that the previous judgment entered by the Court in the above-entitled cause on February 23, 1972 be, and the same is hereby reaffirmed upon reconsideration thereof.

It is further ordered that the stay of the aforesaid judgment, entered by the Court on February 29, 1972 pending hearing and reconsideration be, and the same is hereby dissolved.

feels it is being tortiously damaged, those are very different causes of action with

very different elements than that sought to be pursued here.